FILED
COURT OF APPEALS
DIVISION II

2014 MAR 11 AM 8: 38

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43767-8-II |
| Respondent, | |
| v. | PUBLISHED OPINION |
| JESSICA SOPHIA HAMILTON, | |
| Appellant. | |

Maxa, J. – Jessica Hamilton appeals her conviction for unlawful possession of a controlled substance (methamphetamine). She argues that (1) the warrantless search of a purse containing her rings that her husband showed to officers outside of the couple's home was unlawful and (2) her trial counsel was ineffective for failing to assert the warrantless search as a basis for her motion to suppress the methamphetamine found inside it. Because Hamilton argues that the methamphetamine was discovered as the result of a warrantless search for the first time on appeal, we consider this issue only in the context of ineffective assistance of counsel. We hold that defense counsel's representation was deficient because there was no strategic reason for failing to file a motion to suppress evidence discovered in the warrantless search. We also hold that Hamilton was prejudiced because the trial court likely would have suppressed the evidence on the grounds that she had a subjective expectation of privacy in the purse and she did not

abandon that privacy interest. Therefore, we reverse and remand for further proceedings consistent with this opinion.

## FACTS

Jessica and Travis Hamilton were married in 2007 and lived together in a house in Centralia. In late September 2011, Jessica Hamilton[1] left their home and took the family vehicle. She returned on October 10, 2011. On October 11, Travis obtained a protective order against her. Later that day, Travis returned home and found Hamilton in the house. She had unloaded bags and other items from the vehicle into the kitchen and dining room. Travis immediately called the police and asked them to serve her with the protective order. While looking through the materials Hamilton had unloaded, Travis saw a purse on the counter and observed drug paraphernalia inside.

Centralia police officers arrived at the house and asked Hamilton to come outside. Travis asked the officers to search the vehicle and house. The officers told him that they would not search the house but that Travis could bring items outside to show them. Travis went back into the house and returned with a partially open purse that he said contained drug paraphernalia. He held the purse open for the officers to see. The officers observed drug paraphernalia inside.

The officers then searched the purse and discovered a glass pipe next to a pouch containing Hamilton's wedding rings. After the pipe's contents tested positive for methamphetamine, the officers arrested Hamilton. The State charged her with possession of a controlled substance (methamphetamine), under RCW 69.50.4013 and 69.50.206(d)(2).

---

[1] Because Jessica and Travis share the same last name, we refer to Jessica as "Hamilton" but refer to Travis by his first name for clarity. We intend no disrespect.

Before trial, Hamilton moved to suppress statements she made to officers at the scene. At the hearing, one of the officers testified that Hamilton said that the purse did not belong to her. The officers testified that Hamilton said she had found the purse in the car and did not know to whom the purse belonged. However, the officers also testified that she made statements indicating that her rings were in the purse and that she had put them there. According to an officer, Hamilton later commented that she saw the purse, thought it was cute, and decided to keep it. At trial, the officers again testified that Hamilton told them she had put her rings in the purse.

Hamilton moved to suppress the methamphetamine on the grounds that it was discovered as a result of a warrantless search of her house. She argued that although the officers did not enter the house, Travis acted as their agent when he brought the purse out of the house at the officers' direction. The trial court denied the motion. Hamilton does not challenge that ruling on appeal. Hamilton did not argue that the methamphetamine should have been suppressed on the ground that it was obtained in an unlawful search of the purse.

At trial, the State argued that the purse the officers searched was Hamilton's purse. The State pointed out that although she initially said the purse was not hers, Hamilton admitted that she had decided to keep it because it was cute. In closing argument, the State summed up its position: "What makes sense is that this is her purse, she keeps it in her car, she took it to her house that day, . . . and most importantly, she put her personal belongings, rings, valuable pieces of precious metals, she puts them in there right next to her meth pipe." Report of Proceedings at 197. The State also expressly argued that Hamilton had the capacity to exclude other people from the purse.

The jury found Hamilton guilty as charged, and she appeals.

## ANALYSIS

### A. UNLAWFUL PURSE SEARCH ARGUMENT MADE FOR FIRST TIME ON APPEAL

Hamilton argues that we should reverse her conviction because the methamphetamine was obtained after a warrantless search of the purse and that no exception to the warrant requirement justified the search. However, during her motion to suppress, Hamilton argued only that the evidence should be suppressed because the officers conducted an unlawful search of the home when they asked Travis to search it as their agent. Hamilton now argues for the first time on appeal that the evidence found in the purse should have been suppressed because the search of the purse was unlawful.

RAP 2.5(a) states that "[t]he appellate court may refuse to review any claim of error which was not raised in the trial court." The purpose underlying issue preservation rules is to encourage the efficient use of judicial resources by ensuring that the trial court has the opportunity to correct any errors, thereby avoiding unnecessary appeals. *State v. Robinson*, 171 Wn.2d 292, 304-05, 253 P.3d 84 (2011). Hamilton objected to admission of the seized evidence below, but not on the ground that there was a warrantless search of the purse. Even if a defendant objects to the introduction of evidence at trial, he or she "may assign evidentiary error on appeal only on a specific ground made at trial." *State v. Kirkman*, 159 Wn.2d 918, 926, 155 P.3d 125 (2007). Accordingly, Hamilton failed to preserve her claim for our review.

Although RAP 2.5(a) generally precludes our review of an unpreserved claim in the trial court, the rule states that a party may raise particular types of errors for the first time on appeal. One of the exceptions is RAP 2.5(a)(3), which allows review of "manifest error affecting a constitutional right." But Hamilton does not argue that any of the exceptions listed in RAP 2.5(a) apply. Instead, she argues that her counsel was ineffective for failing to raise the

warrantless purse search argument below. Therefore, we do not address any of the exceptions to RAP 2.5(a).

B.     INEFFECTIVE ASSISTANCE OF COUNSEL

Hamilton argues that her counsel was ineffective for failing to argue in a motion to suppress that the evidence seized from the purse was the result of an unlawful warrantless search. We agree. Because there was no legitimate tactical reason for counsel not to have moved to suppress the evidence based on an unlawful warrantless search of the purse, and because the trial court likely would have granted a motion to suppress on this basis, we hold that Hamilton has shown that her counsel's performance was deficient and that it prejudiced her.

1.     Test for Ineffective Assistance

We review claims of ineffective assistance of counsel de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To prevail on an ineffective assistance of counsel claim, the defendant must show both that (1) defense counsel's representation was deficient and (2) the deficient representation prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011). Representation is deficient if after considering all the circumstances, it falls below an objective standard of reasonableness. *Grier*, 171 Wn.2d at 33. Prejudice exists if there is a reasonable probability that except for counsel's errors, the result of the proceeding would have been different. *Grier*, 171 Wn.2d at 34. The remedy for a lawyer's ineffective assistance is to put the defendant in the position in which he or she would have been had counsel been effective. *State v. Crawford*, 159 Wn.2d 86, 107-08, 147 P.3d 1288 (2006).

2. Deficient Representation

We give great deference to trial counsel's performance and begin our analysis with a strong presumption that counsel's performance was reasonable. *Grier*, 171 Wn.2d at 33. A claim that trial counsel was ineffective does not survive if trial counsel's conduct can be characterized as legitimate trial strategy or tactics. *Grier*, 171 Wn.2d at 33. To rebut the strong presumption that counsel's performance was effective, the defendant bears the burden of establishing the absence of any " '*conceivable* legitimate tactic explaining counsel's performance.' " *Grier*, 171 Wn.2d at 33 (emphasis added) (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)).

Hamilton argues that her counsel's performance was deficient because there was no conceivable strategic reason for her counsel to have failed to move to suppress based on an unlawful warrantless search of the purse. We agree.

Although Hamilton said that the purse did not belong to her, there was testimony from the officers that she stated that she found the purse in her car and decided to keep it and that she placed her rings in the purse. The officers confirmed at trial that Hamilton told them she had put the rings in the purse. As discussed below, these facts give rise to a valid argument for suppression based on an unlawful warrantless search of a purse in which Hamilton had an expectation of privacy. Moving to suppress the evidence would not have involved any risk to Hamilton. If she prevailed, the charges would be dismissed. If the motion was denied, she could proceed to trial. There was no strategic reason not to file a motion to suppress the most crucial evidence in the case.

The State argues that it would have been unethical for trial counsel to have moved to suppress because such a motion would have been inconsistent with Hamilton's trial testimony.

6

At trial, Hamilton testified that the purse did not belong to her and that she did not put her rings in the purse. Similarly, the State claims that arguing in a suppression motion that Hamilton had a privacy interest in the purse would have been inconsistent with her theory at trial that her friends had accidentally placed her rings in someone else's purse. Therefore, according to the State, counsel's decision not to file a suppression motion was sound trial strategy.

However, the State's argument incorrectly assumes that it would be improper for Hamilton to argue at a suppression hearing that she had a privacy interest in the purse and later argue at trial that the purse did not belong to her. Under the judicial estoppel doctrine, Hamilton could not assert one position to gain an advantage at the suppression hearing and then assert a different position at trial to achieve a different advantage. *City of Spokane v. Marr*, 129 Wn. App. 890, 893, 120 P.3d 652 (2005). But here, had Hamilton been successful suppressing the evidence, the charges would have been dismissed. She would not have needed to assert an inconsistent position at trial. And if she had lost at the suppression hearing, then she would not have gained an advantage and she would not be judicially estopped from asserting an inconsistent position at trial. *Marr*, 129 Wn. App. at 893.

Similarly, defense counsel ethically may not have been able to have Hamilton testify at a suppression hearing that the purse was hers and then allow her to testify the opposite at trial. But defense counsel likely would not have needed or wanted to call Hamilton as a witness at the suppression hearing. Counsel could have relied solely on the testimony of the officers, who stated that Hamilton told them that she found the purse in her car and decided to keep it, and that she had put the rings in her purse. Even though Hamilton may not have agreed fully with the officers' testimony, she would have had no obligation to dispute it at the suppression hearing.

7

Because Hamilton would have relied solely on the officers' testimony at the suppression hearing, there would have been no risk that she would provide inconsistent testimony. If the motion was successful, Hamilton never would have testified. If the motion was unsuccessful, Hamilton would have been free at trial to provide testimony that contradicted the officers' testimony.[2]

We hold that there was no conceivable legitimate tactical reason explaining counsel's failure to move to suppress crucial evidence based on an unlawful search of the purse. As a result, counsel's performance was deficient.

3. Prejudice – Lawfulness of Search

In order to establish actual prejudice, Hamilton must show that the trial court likely would have granted a motion to suppress the seized evidence based on an unlawful warrantless search of her purse. *See State v. McFarland*, 127 Wn.2d 322, 337 n. 4, 899 P.2d 1251 (1995). Therefore, we first address whether the search was lawful.

Hamilton argues that the State's search of the purse was unlawful under article I, section 7 of the Washington State Constitution and the Fourth Amendment to the United States Constitution because the officers did not have a warrant and because no exception to the warrant requirement applied.[3] The State responds that Hamilton disavowed any interest in the purse and,

---

[2] Hamilton did testify at the motion to suppress regarding her statements made to the officers. However, if her counsel had successfully moved to suppress the drugs seized from the purse there would have been no need for a motion to suppress the statements.

[3] Article I, section 7 provides greater protection to individuals from warrantless searches and seizures than does the Fourth Amendment. *State v. Ortega*, 177 Wn.2d 116, 122, 297 P.3d 57 (2013). Accordingly, when a defendant claims both state and federal violations, we first review claims under the state constitution. *State v. Monaghan*, 165 Wn. App. 782, 787, 266 P.3d 222 (2012).

therefore, she had no privacy interest in it at the time it was searched. We agree with Hamilton.

a. Reasonable Expectation of Privacy

As a prerequisite to claiming an unconstitutional search, a defendant must demonstrate that he or she had a reasonable expectation of privacy in the item searched. *State v. Poling*, 128 Wn. App. 659, 667, 116 P.3d 1054 (2005). This involves a two-part test. *State v. Evans*, 159 Wn.2d 402, 409, 150 P.3d 105 (2007). The defendant must show that (1) he or she had an " 'actual (subjective) expectation of privacy by seeking to preserve something as private' " and (2) society recognizes that expectation as reasonable. *Evans*, 159 Wn.2d at 409 (quoting *State v. Kealey*, 80 Wn. App. 162, 168, 907 P.2d 319 (1995)).

In *Evans*, our Supreme Court held that a privacy interest could exist even in an item the defendant did not own. 159 Wn.2d at 409. Evans consented to a search of his truck and an officer discovered a locked briefcase in the back seat. *Evans*, 159 Wn.2d at 405. Evans denied ownership of the briefcase and said that he could not give the officer permission to open it. *Evans*, 159 Wn.2d at 405-06. Over Evans's objection, the officer seized the briefcase and a search revealed materials consistent with the production of methamphetamine. *Evans*, 159 Wn.2d at 406. The court held that Evans "easily" established a subjective expectation of privacy because (1) the briefcase was in his truck, (2) the briefcase was closed and locked, and (3) he objected to its seizure. *Evans*, 159 Wn.2d at 409. The court held that Evans also satisfied the second part of the test because society recognizes a general expectation of privacy in briefcases. *Evans*, 159 Wn.2d at 409.

The facts here are different than in *Evans*. As in *Evans*, Hamilton disclaimed ownership of the purse. However, unlike in *Evans*, (1) the purse was not in a "protected" area like a car or house when searched, (2) the purse was not locked or even closed, and (3) Hamilton did not

9

object to its search. Nevertheless, *Evans* does establish that Hamilton could have an expectation of privacy in the purse even though she did not own it.

Further, here there was evidence that even though the purse did not initially belong to Hamilton, she had decided to keep it and she placed her rings inside it. This evidence shows that Hamilton exercised a possessory interest in the purse despite not owning it. Further, Hamilton placed the purse inside her house, a place in which she had a privacy interest. We hold that this possessory interest is sufficient to create a subjective expectation of privacy in the purse.

The State cannot legitimately dispute this conclusion given its position at trial. The State argued at trial that Hamilton had placed her rings (and her methamphetamine pipe) in the purse, that it was *her* purse, and that she had the capacity to exclude others from it. The jury apparently accepted the State's argument. It would be inconsistent for the State now to claim that Hamilton had no expectation of privacy in the purse.

In addition, there is no question that the expectation of privacy in a purse is reasonable. *Kealey*, 80 Wn. App. at 170 ("Purses, briefcases, and luggage constitute traditional repositories of personal belongings protected under the Fourth Amendment."). This is particularly true here, when Hamilton left the purse in her house. Therefore, Hamilton had a reasonable expectation of privacy in the purse and the search was unconstitutional unless an exception to the warrant requirement applies.

b. Abandonment Exception

Under article I, section 7, "[a] warrantless search is per se unreasonable and its fruits will be suppressed unless it falls within one of the carefully drawn and jealously guarded exceptions to the warrant requirement." *State v. Ortega*, 177 Wn.2d 116, 122, 297 P.3d 57 (2013). One of those exceptions is for voluntarily abandoned property, which officers may lawfully search

without a warrant. *Evans*, 159 Wn.2d at 407-08. When a defendant disclaims ownership of an item searched, courts generally review whether the search was lawful under the abandonment exception. *See Evans*, 159 Wn.2d at 407-08; *State v. Reynolds*, 144 Wn.2d 282, 287, 27 P.3d 200 (2001).

"A defendant's privacy interest in property may be abandoned voluntarily or involuntarily."[4] *Evans*, 159 Wn.2d at 408. Whether a defendant voluntarily has abandoned property for purposes of the abandonment exception is based on a combination of act and intent. *Evans*, 159 Wn.2d at 408. "Intent may be inferred from words spoken, acts done, and other objective facts, and all the relevant circumstances at the time of the alleged abandonment should be considered." *State v. Dugas*, 109 Wn. App. 592, 595, 36 P.3d 577 (2001). "The issue is not abandonment in the strict property right sense but, rather, 'whether the defendant in leaving the property has relinquished her reasonable expectation of privacy so that the search and seizure is valid.' " *Evans*, 159 Wn.2d at 408 (internal quotation marks omitted) (quoting *Dugas*, 109 Wn. App. at 595).

One factor to be considered when determining whether property has been abandoned is whether the defendant disclaimed ownership of the property. *Evans*, 159 Wn.2d at 412. But "disclaiming ownership is not sufficient, by itself, to constitute abandonment. The circumstances surrounding the disclaimer of ownership dictate whether a defendant has

---

[4] "Involuntary abandonment occurs when property [is] abandoned as a result of illegal police behavior." *Evans*, 159 Wn.2d at 408. Because neither party argues that Hamilton involuntarily abandoned the purse and because Hamilton was not illegally seized when she disclaimed ownership of the purse, we presume that Hamilton's actions with respect to the purse were voluntary and that other aspects of the search and seizure were proper. *See Evans*, 159 Wn.2d at 408. *See also State v. Nettles*, 70 Wn. App. 706, 713, 855 P.2d 699 (1993) (no coerced abandonment because defendant was not illegally seized when he threw baggie of cocaine under police car).

11

abandoned his or her property." *Evans*, 159 Wn.2d at 412-13. Here, Hamilton stated that she did not own the purse but, according to the officers she also made statements indicating that she had decided to keep it and had put her rings in it. Under these circumstances, disclaiming ownership alone was not enough to constitute an abandonment of the purse.

Another critical factor courts consider when determining whether abandonment has occurred is the status of the area where the searched item was located. *Evans*, 159 Wn.2d at 409. Generally, no abandonment will be found if the searched item is in an area where the defendant has a privacy interest. *Evans*, 159 Wn.2d at 409 (no voluntary abandonment when briefcase belonging to third party was in defendant's car); *Dugas*, 109 Wn. App. at 596 (defendant did not voluntarily abandon jacket he left on hood of car after arrest). Conversely, abandonment generally will be found if the defendant has no privacy interest in the area where the searched item is located. *Evans*, 159 Wn.2d at 409-10. *See Reynolds*, 144 Wn.2d at 291 (seizure of jacket found underneath vehicle stopped for traffic infraction was reasonable after defendant denied ownership); *State v. Young*, 86 Wn. App. 194, 935 P.2d 1372 (1997) (defendant voluntarily abandoned drugs thrown in bushes before his arrest), *aff'd*, 135 Wn.2d 498, 957 P.2d 681 (1998); *State v. Nettles*, 70 Wn. App. 706, 713, 855 P.2d 699 (1993) (defendant voluntarily abandoned drugs dropped on ground after removing hands from pockets upon officer's request).

Here, the officers searched the purse outside the house, in an area where Hamilton had no privacy interest. However, unlike in *Reynolds* and similar cases, Hamilton did not leave the purse in an unprotected area. She left the purse on the counter in her house, where she did have a privacy interest. Leaving the purse in her house is not consistent with abandonment. The fact that Travis brought the purse outside does not support a claim of abandonment.

12

There is no other evidence supporting the State's argument that Hamilton abandoned the purse. Accordingly, the abandonment exception to the warrant requirement does not apply.

c. Consent to Search from Travis

The State also argues that the search was lawful because Hamilton said that the purse did not belong to her, and therefore Travis had authority to consent to its search when he removed it from the couple's home. Br. of Resp't at 11. Voluntary consent is an exception to the warrant requirement. *State v. Khounvichai*, 149 Wn.2d 557, 562, 69 P.3d 862 (2003). However, as discussed above, Hamilton had a privacy interest in the purse. Travis had no ownership or possessory interest in the purse, other than the fact that it had been left in his house. Accordingly, Travis had no authority to consent to search the purse, particularly when Hamilton was present. *Cf. State v. Morse*, 156 Wn.2d 1, 13-14, 123 P.3d 832 (2005) (for a house search, a cohabitant with equal or greater control over premises cannot be bound by another cohabitant's consent to search when the nonconsenting cohabitant is present).

We hold that Hamilton's unabandoned privacy interest in the purse authorized her to bring a motion to suppress its contents regardless of Travis's purported consent to its search.

d. Judicial Estoppel

Finally, the State argues that Hamilton is judicially estopped from claiming that she had a privacy interest in the purse because she denied ownership of the purse at trial. This argument fails for three reasons.

First, "[j]udicial estoppel is an equitable doctrine that precludes a party from gaining advantage by asserting one position in a court proceeding and later seeking a second advantage by taking a clearly inconsistent position." *Marr*, 129 Wn. App. at 893. "The doctrine applies 'only if a litigant's prior inconsistent position benefited the litigant or was accepted by the

court.' " *Marr*, 129 Wn. App. at 893 (quoting *Johnson v. Si-Cor, Inc.*, 107 Wn. App. 902, 909, 28 P.3d 832 (2001)). Here, Hamilton's position at trial that the purse did not belong to her provided her no benefit and was not accepted by the jury. As a result, judicial estoppel is inapplicable.

Second, judicial estoppel is inapplicable in the context of our ineffective assistance of counsel analysis. The question here is whether the trial court would have granted a *pre-trial* suppression motion if counsel had filed one. What happened at trial is not material to this inquiry. As noted above, if the trial court would have granted a suppression motion there would have been no trial.

Third, the State's argument mischaracterizes Hamilton's position at trial. She did not argue that she had no privacy interest in the purse. The existence of a privacy interest was not at issue at trial. Instead, she argued that the purse did not belong to her and that its contents (except for the rings) were not hers. These positions are not necessarily inconsistent. Accordingly, we hold that the State's judicial estoppel claim fails.

4. Conclusion

Defense counsel's representation was deficient because there was no strategic reason for failing to file a motion to suppress the methamphetamine on the ground that it was discovered in an unlawful search. In addition, Hamilton was prejudiced by her counsel's failure to file such a motion. Because the officers' testimony indicated that Hamilton exercised a possessory interest in the purse, she had an expectation of privacy in it even though she disclaimed ownership. Similarly, the fact that she had a possessory interest shows that merely disclaiming ownership did not constitute an abandonment of her privacy interest. Finally, Travis's consent to search the purse did not justify the search because he had no authority to give consent. Accordingly, the

14

No. 43767-8-II

trial court likely would have suppressed the methamphetamine if defense counsel had filed a motion to suppress.

We hold that Hamilton prevails on her ineffective assistance of counsel claim. We reverse the conviction and remand for proceedings consistent with this opinion.

MAXA, J.

We concur:

JOHANSON, A.C.J.

BJØRGEN, J.

15