IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 31607-6-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JASON ALLAN FRENCH, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, J. — A jury convicted Jason French of two counts of distribution of a controlled substance to a person under the age of 18, communication with a minor for immoral purposes, and unlawful possession of a controlled substance. French challenges his conviction for communication with a minor. He also challenges those parts of his sentence imposing a lifetime no contact order with one of his victims, requiring human immunodeficiency virus (HIV) testing, and imposing legal financial obligations (LFOs). We reverse the conviction for communication with a minor and remand the charge for a new trial since the statute of limitations bars a conviction for some of the incidents within the charging period. We agree with French that the trial court exceeded its statutory authority when it imposed a lifetime no-contact order with one of the victims and when it

ordered human immunodeficiency virus (HIV) testing. We decline to address the imposition of LFOs in light of the remand for a new trial.

FACTS

Jason French's convictions arise from his unsuitable relationships with two girls, K.M. and N.H., which relationships began when French was 33 years of age and the girls were 13. K.M. was born August 8, 1994. N.H. was born October 17, 1994. Beginning in the seventh grade, K.M. and N.H. were close friends. Beginning in the eighth grade, the girls socialized with Jason French.

Jason French lived down the alleyway from N.H. N.H. first met French in the alley when she asked him for a cigarette. French responded that he did not have a cigarette, but offered to smoke marijuana with N.H. in the back of his car. N.H. accepted French's offer. K.M. met Jason French a few weeks later. N.H. and K.M. began to regularly smoke marijuana, provided by French, at his home. Jason French also served the girls Mike's Hard Lemonade and whiskey.

As the relationship between the three progressed, Jason French retrieved the girls from school and drove them to his home to smoke marijuana. The trio smoked once or twice a week at first, but the practice escalated to three times a day: before school, during lunch, and after school. During ninth grade, September 2009 to June 2010, N.H. and K.M. often skipped school to smoke marijuana with French.

During the relationship, Jason French fixated on N.H. She testified at trial that,

while she was in seventh, eighth, and ninth grade, French often asked to see her body, asked her for sex, tried to rub her legs, and tried to kiss her. N.H. was 13, 14, and 15 years old respectively, during those school years. French texted N.H. that she was beautiful and called her an angel. French asked N.H. to watch pornography with him.

Early in N.H.'s ninth grade year, Jason French taught N.H. how to smoke methamphetamine. They also snorted methamphetamine together. One time, N.H. expressed to French that she felt ill after smoking methamphetamine and French invited her to bathe. N.H. bathed in French's home while he watched and smoked methamphetamine. N.H. testified that she feared Jason French, yet returned to him repeatedly for the drugs he supplied.

K.M. failed ninth grade science. K.M.'s father noticed his daughter becoming combative, staying out late, and lying. K.M.'s father moved their family to Yakima, where K.M. started her sophomore year of high school at age 16. N.H.'s grades declined as well and she dropped out of school half way through ninth grade.

While 16, N.H., on one occasion, left home one unidentified night to meet Jason French. French drove them to a secluded viewpoint. N.H. testified:

> Q    What happened when you got up there?
> A    I took my pants off.
> Q    And were you in the front seat or the back seat?
> A    Front seat, passenger.
> Q    And did he take you are [sic] pants off or did you take your
>      pants off?
> A    But he took his pants off.

Q     Oh, I'm sorry, he took his pants off?
A     Yes, so I took mine off.
Q     And you took yours off?
A     Yes.
Q     And then what happened?
A     And he stuck his dick in me.
Q     And did you push him away?
A     No, I was too scared.
Q     Did you want to do that?
A     No.
Q     Did you tell him no?
A     I didn't really say anything.  I was kind of too messed up.
Q     Messed up in what way?
A     Drugs and stuff.
Q     So then what happened?
A     Well, he did it for a little bit and then it was done.  And then
       we -- he took me home.

Report of Proceedings (RP) (April 10, 2013) at 200-01.  French repeated his conduct with

N.H. the following night.

In January 2011, when K.M. was a high school sophomore, N.H. phoned K.M.

and told her that Jason French raped her.  K.M. encouraged N.H. to tell police.  N.H. told

her father of the rape and he notified police.

On March 11, 2011, law enforcement executed a search warrant of Jason French's

home.  Officers seized pipes, a glass jar, a scale, marijuana, and methamphetamine.

French arrived home after the seizure and admitted to police that he knew N.H. and that

he possessed narcotics.  French agreed to an interview at the police station.

During the recorded interview, later admitted for illustrative purposes only, Jason

French first denied sexual relations with N.H., while admitting that he loved her and that

4

they kissed. French later admitted he had sex with N.H. French claimed that N.H.

obtained methamphetamine from her father, but also admitted to giving her

methamphetamine. French conceded providing K.M. and N.H. with marijuana.

PROCEDURE

On March 16, 2011, the State of Washington charged Jason French with one count

of distributing a controlled substance to a person under the age of 18 with a sentence

enhancement for sexual motivation, and one count of communication with a minor for

immoral purposes. At the March 24, 2011 arraignment, the trial court appointed veteran

defense counsel Dan Arnold to represent French.

The trial court committed Jason French to Eastern State Hospital for an evaluation

of whether French could adequately assist his lawyer and was competent to stand trial.

Dr. Trevor Travers and Dr. Mark Mays evaluated French at the hospital. Based on their

testimony at a February 16, 2012 competency hearing, the trial court found that Jason

French had the capacity to understand the proceedings and to assist his attorney in his

own defense.

At a December 2012 hearing, Jason French expressed a desire to hire his own

attorney. On January 31, 2013, Alexandria Sheridan substituted as defense counsel for

Dan Arnold and she represented French through trial and sentencing.

On March 28, 2013, the State of Washington amended the information to add a

second count of distribution of a controlled substance to a person under the age of 18 and

5

to add one count of possession of methamphetamine. The State amended the information for a second time on April 8, 2013, the day before trial, to reduce the charge of communication with a minor for immoral purposes to a gross misdemeanor from a felony.

A felony charge of communications with a minor for immoral purposes carries a statute of limitations of three years, which, in this case, precluded prosecution for communications occurring before March 17, 2008. RCW 9A.04.080(1)(h). A gross misdemeanor charge incorporates an applicable statute of limitations of two years, with a resulting cutoff date of March 17, 2009. RCW 9A.04.080(1)(i). In the second amended information, the charging period for communication with a minor spanned between October 17, 2007, and October 16, 2010. The charging period thus included time for which the statute of limitations had already lapsed.

Trial occurred April 9 through 11, 2013. Shortly before trial, defense counsel expressed a concern that Jason French might be under the influence of a drug. After French complained about the justice system, the trial court found him sober and ordered trial to continue.

The trial court admitted as evidence the audio recording of the police custodial interview of Jason French. Defense counsel asked no questions of some witnesses, and few questions of others. Defense counsel asked the interviewing officer how the audio recording device functioned. Defense counsel asked K.M. whether any teachers noticed

6

that she was high, to which she responded no. Defense counsel asked N.H. about whether she and French talked about Jesus and religion, to which she answered yes.

Defense counsel advised Jason French not to testify, which advice he followed stating, "Yes. I'm trusting her opinion here." RP (April 11, 2013) at 228. In closing arguments, counsel emphasized numerous inconsistencies between N.H.'s and K.M.'s testimony. Each girl described going to French's home at different times of day; K.M. smoked marijuana, while N.H. smoked methamphetamine; and K.M.'s teachers never noticed she was high. Based on these inconsistencies, defense counsel argued that the girls implicated Jason French to avoid trouble and the State failed in its burden of beyond a reasonable doubt. Defense counsel also argued that coercive interrogation methods led to French's admissions during the custodial interview, and that the jury should disregard French's acknowledgements.

The jury found Jason French guilty on all four counts, but found by special verdict that French lacked a sexual motivation when he delivered methamphetamine to N.H. The court held a sentencing hearing on April 22, 2013. The trial court sentenced Jason French to confinement of 60 months for count one, 364 days for count two, 60 months for count three, and six months for count four. With counts one, three, and four running concurrently, but count two running consecutively, the court ordered total confinement of 72 months.

7

The trial court, without objection from Jason French, imposed LFOs of $3,260. In doing so, the court omitted a finding that French had the present or future ability to pay LFOs. As part of the $3,260, the trial court imposed $950 in special costs reimbursement. The trial court also entered a no-contact order precluding Jason French from knowingly being within 250 feet of N.H.'s or K.M.'s residence, school, or place of employment within the victims' respective lifetimes. Finally, the trial court ordered Jason French to undergo HIV testing.

## LAW AND ANALYSIS

On appeal, Jason French contends: (1) the charging period for count two, communication with a minor for immoral purposes, exceeded the applicable statute of limitations; (2) defense counsel was ineffective because she failed to notice that the charging period for count two exceeded the statute of limitations, and she insufficiently cross-examined witnesses; (3) the trial court exceeded its statutory authority when it imposed a lifetime no-contact order for a class C felony; (4) the trial court erred when it ordered HIV testing because there was no evidence of the use of hypodermic needles; and (5) the trial court erred when it imposed LFOs without considering his ability to pay them.

### Count Two and the Statute of Limitations

Jason French contends that his conviction for communication with a minor must be reversed because the jury may have relied on an act outside the statute of limitations to

8

convict him. The State concedes error. The statute of limitations in a criminal case is jurisdictional. Accordingly, a statute of limitations challenge in a criminal case can be raised for the first time on appeal. *State v. Walker*, 153 Wn. App. 701, 705, 224 P.3d 814 (2009); *but see State v. Peltier*, 181 Wn.2d 290, 298, 332 P.3d 457 (2014).

The jury convicted Jason French of communication with a minor for immoral purposes in violation of RCW 9.68A.090. The statute reads:

> (1) Except as provided in subsection (2) of this section, a person who communicates with a minor for immoral purposes, or a person who communicates with someone the person believes to be a minor for immoral purposes, is guilty of a gross misdemeanor.
> (2) A person who communicates with a minor for immoral purposes is guilty of a class C felony punishable according to chapter 9A.20 RCW if the person has previously been convicted under this section or of a felony sexual offense under chapter 9.68A, 9A.44, or 9A.64 RCW or of any other felony sexual offense in this or any other state or if the person communicates with a minor or with someone the person believes to be a minor for immoral purposes through the sending of an electronic communication.

The State of Washington charged Jason French under subsection (1), alleging a gross misdemeanor. RCW 9A.04.080 lists statute of limitations for criminal offenses. Under RCW 9A.04.080(1)(i): "No gross misdemeanor may be prosecuted more than two years after its commission."

The State filed its first information on March 16, 2011. Based on the date of filing, the jury could have convicted Jason French for any act constituting communication with a minor occurring on or after March 17, 2009. The State's final information charged

9

French with communicating with N.H. with an immoral purpose between October 17, 2007, and October 16, 2010. Thus, the jury may have convicted French for immoral communication on an act occurring prior to March 17, 2009, and outside the limitation period. The jury was not asked and did not specify upon which act or acts it convicted Jason French.

The State correctly notes that the jury may have relied on an act occurring within the statute of limitations, such as the bathtub incident, which occurred between September 2009 and June 2010 during N.H.'s freshman year of high school. When some conduct occurred within the statute of limitations and other conduct occurred outside the limitation period, the proper remedy is to reverse the conviction and remand for a new trial. *State v. Mermis*, 105 Wn. App. 738, 752, 20 P.3d 1044 (2001). We remand the charge of communication with a minor for an immoral purpose for a new trial.

*Defense Counsel's Effectiveness*

Jason French contends that defense counsel was ineffective because she failed to notice that the charging period for communication with a minor exceeded the statute of limitations, and she insufficiently cross-examined witnesses. Since we reverse the charge of communication with a minor on other grounds, we limit our review to the cross-examination of witnesses.

A claim of ineffective assistance of counsel requires a showing that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defendant.

10

*State v. Thomas*, 109 Wn.2d 222, 225, 743 P.2d 816 (1987). Deficient performance occurs when counsel's performance falls below an objective standard of reasonableness. *State v. Stenson*, 132 Wn.2d 668, 705, 940 P.2d 1239 (1997). This court presumes that counsel was effective. *Strickland v. Washington*, 466 U.S. 668, 689-90, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). To rebut the strong presumption that counsel's performance was effective, the defendant bears the burden of establishing the absence of any conceivable legitimate tactic explaining counsel's performance. *State v. Hamilton*, 179 Wn. App. 870, 879-80, 320 P.3d 142 (2014). Prejudice occurs where, but for the deficient performance, the outcome would have differed. *In re the Pers. Restraint of Pirtle*, 136 Wn.2d 467, 487, 965 P.2d 593 (1998).

Jason French describes the performance of his counsel as: "[i]n essence, defense counsel was filling a seat." Br. of Appellant at 14. This characterization is inaccurate and unfair. Just before trial, defense counsel expressed a concern that Jason French might be under the influence of a drug. Later, defense counsel explained to the court that she met with and advised Jason French not to testify. French heeded this advice. The record shows that defense counsel sought to ensure that French received a fair trial and that she and French had a functioning attorney-client relationship.

Jason French's argument of insufficient cross-examination ignores the truth that juries may rely on all testimony, whether elicited by the State or defense, to convict or

acquit a defendant. Defense counsel could have asked N.H. and K.M. to explain the inconsistencies between their testimonies. Instead, she saved those inconsistencies for closing arguments. Asking witnesses for an explanation could have resulted in the jury hearing a compelling explanation. Thus, defense counsel engaged in a valid strategy.

The extent of cross-examination is a matter of judgment and strategy. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 720, 101 P.3d 1 (2004). This court will not find ineffective assistance of counsel based on trial counsel's decisions during cross-examination if counsel's performance fell within the range of reasonable representation. *Davis*, 152 Wn.2d at 720.

In order to establish prejudice for failure to effectively cross-examine a witness, the defendant must show that the testimony that would have been elicited on cross-examination could have overcome the evidence against the defendant. *Davis*, 152 Wn.2d at 720; *State v. Johnston*, 143 Wn. App. 1, 20, 177 P.3d 1127 (2007). Jason French has not identified any exculpatory testimony defense counsel could have elicited. His ineffective assistance claim necessarily fails.

*Lifetime No-Contact Order*

Jason French concedes that the trial court could have imposed a lifetime ban against contact with N.H., but argues that the trial court exceeded its authority when it imposed a lifetime no contact order for K.M. The State of Washington concedes error.

The Sentencing Reform Act of 1981 authorizes trial courts to impose crime-

12

related prohibitions as a condition of sentence, independent of community custody.

RCW 9.94A.505(8); *State v. Warren*, 165 Wn.2d 17, 32, 195 P.3d 940 (2008). A no-

contact order is one such crime-related prohibition. *State v. France*, 176 Wn. App. 463,

473, 308 P.3d 812 (2013), *review denied*, 179 Wn.2d 1015 (2014). A court's no-contact

order may not exceed the maximum allowable sentence for the crime for which it is

imposed. *State v. Armendariz*, 160 Wn.2d 106, 112, 156 P.3d 201 (2007).

Only one count, distribution of a controlled substance to a person under the age of

18, related to conduct with K.M. Distribution to a minor is controlled by RCW

69.50.406(2), which provides:

> Any person eighteen years of age or over who violates RCW
> 69.50.401 by distributing any other controlled substance listed in Schedules
> I, II, III, IV, and V to a person under eighteen years of age who is at least
> three years his or her junior is guilty of a class B felony punishable by the
> fine authorized by RCW 69.50.401(2)(c), (d), or (e), by a term of
> imprisonment up to *twice* that authorized by RCW 69.50.401(2)(c), (d), or
> (e), or both.

(Emphasis added.) Jason French distributed marijuana to K.M., which is a schedule I

substance under RCW 69.50.204, and a class C felony under RCW 69.50.401(2)(c). The

maximum prison term is five years under RCW 9A.20.021(c). The maximum term for

French's violation of RCW 69.50.406(2) is thus 10 years, which, in turn, constitutes the

maximum time for a prohibition on contact.

We remand with instruction for the trial court to modify the no-contact order with

K.M. to no longer than 10 years.

13

*HIV Testing*

Jason French contends the trial court erred when it ordered HIV testing when the record lacks evidence of hypodermic needles being used in connection with the use of either methamphetamine or marijuana. We agree, based on our recent decision in *State v. Mercado*, 181 Wn. App. 624, 626-27, 326 P.3d 154 (2014).

RCW 70.24.340(1)(c) authorizes a local health department to conduct HIV testing and counseling of a defendant found guilty of a drug offense if the court determines that the "related drug offense is one associated with the use of hypodermic needles." As we recently held in *Mercado*, "HIV testing may not be ordered unless the trial court enters a finding that the defendant used or intended use of a hypodermic needle at the time of committing the crime." *Mercado*, 181 Wn. App. at 636.

As in *Mercado*, the appropriate remedy is to remand for a hearing on the question of whether HIV testing should be ordered. In this case, the trial court may resolve this issue when it resentences Jason French, ordering HIV testing only if it finds that French used or intended use of a hypodermic needle at the time of committing the crimes.

*Legal Financial Obligations*

Jason French challenges the trial court's imposition of LFOs on two grounds. First, French contends the trial court did not consider his present or future ability to pay LFOs. Second, French contends there is no information as to the underlying basis for imposition of the $950 in special costs reimbursement. Since we reverse the conviction

on count two and remand for a new trial, this contention is not yet ripe for review. The amount and nature of LFOs could change after a new trial. Thus, we do not address the validity of the LFOs on this appeal.

## CONCLUSIONS

We affirm Jason French's convictions on counts one, three, and four and reverse Jason French's conviction on count two, the charge of communication with a minor for an immoral purpose. We remand for a new trial on that charge and instruct the trial court to resentence French after retrial in a manner consistent with this opinion.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Siddoway, C.J.

_____
Brown, J.

15