IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32982-8-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RUSTY JOE ABRAMS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, C.J. — The trial court, after a jury trial, convicted Rusty Abrams of both

assault in the second degree and assault in the third degree with the aggravating

circumstances of a crime against a law enforcement officer. Abrams seeks reversal of

both convictions on evidentiary grounds. We deny this request, but agree with his other

argument that, based on double jeopardy grounds, he cannot be convicted of both crimes

since each charge arises from the identical conduct.

FACTS

During the early morning of April 27, 2014, Officer Patrick Canady, of the

Ephrata Police Department, patrolled city streets in a marked police car and while

wearing his police uniform. At 1:00 a.m., Canady espied a man walking on Nat Washington Way. The stroller wore a gray sweatshirt, red hat, dark pants, and black backpack. Officer Canady shined his patrol car spotlight on the man and recognized him, without a doubt, as Rusty Joe Abrams. An outstanding warrant then demanded Abrams' arrest.

After Officer Patrick Canady spotted Rusty Abrams, a train passed and blocked Canady's access to and view of Abrams. Officer Canady waited for the train to pass and radioed to other officers that he had located Abrams. After the train passed, Canady saw Abrams ambulate south on A Street away from Nat Washington Way. As Canady drove down A Street, Abrams switched directions and ran north on A Street. Canady activated his patrol car's overhead lights and followed Abrams. Abrams ran around a fence, at which point Canady lost sight of Abrams.

Officer Patrick Canady entered another street and parked his patrol car by a fenced area where two trucks parked. With aid of the car's flashing lights, Canady again spotted Rusty Abrams squatting by the fence. Canady exited his patrol car, unholstered his Taser, and ordered Abrams to lie on the ground. Canady approached within ten feet of Abrams. Abrams ran instead of complying with the police order. Officer Canady yelled "'Taser, Taser, Taser, Stop!'" Report of Proceedings (RP) at 280. He then reholstered his Taser and chased Abrams.

2

As Officer Patrick Canady neared within five feet of Rusty Joe Abrams, Canady saw a mist appear over Abrams' left shoulder. Officer Canady ran into the mist, and the spray disabled him. The spray shut Canady's eyes and caused him pain and breathing difficulty. Canady identified the mist as pepper spray.

Officer Patrick Canady quickly retreated behind a truck parked by his police cruiser. He called dispatch for help. Officer Jack McLauchlan found Canady. Officer McLauchlan checked the condition of Canady and then pursued Rusty Abrams. Canady summoned an ambulance and awaited medical assistance in his patrol car.

Officer Jack McLauchlan failed to locate Rusty Abrams and returned to assist Officer Patrick Canady. In the meantime, Canady grew impatient with the slow ambulance and drove himself to the hospital. At the hospital, Canady rinsed his face and eyes. Dr. Brett Taylor examined Canady's eyes and detected no continuing ailment. Within an hour, Canady returned to and photographed the area where he encountered Rusty Abrams.

The following day Ephrata police officers found Rusty Abrams and arrested him. Officers also discovered a can of pepper spray on Abrams' person. Officers Jack McLauchlan and Patrick Canady squirted, onto a paper towel, the spray confiscated from Abrams. Canady smelled the aroma he encountered the previous night when entering the mist sprayed by Rusty Abrams.

3

Rusty Abrams wrote a letter while in jail pending trial. He wrote "Rusty Abrams" in the upper left-hand corner of the letter's envelope. RP at 216. A portion of the partly poetic letter read:

> A Tank isn't what it used to be.
>
> . . . .
>
> I had . . . an empty can of mace, the police giving chase, dropping like flies out of the race. Pepper spray in the face.
>
> . . . .
>
> I turned old Urwin into a believer, told him that pepper spray takes stupid away.

RP at 505-07.

## PROCEDURE

The State of Washington charged Rusty Abrams with three crimes: assault in the second degree by reason of poison or torture in violation of RCW 9A.36.021(1)(d), (f) and (g); assault in the third degree by reason of criminal negligence and substantial pain in violation of RCW 9A.36.031(1)(f) and with the aggravated circumstance of a crime against a police officer in violation of RCW 9.94A.535(3)(v); and assault in the third degree of a law enforcement officer in violation of RCW 9A.36.031(1)(g).

By the date of trial, the State had filed its third amended information. The last information charged Rusty Abrams with assault in the second degree by reason of poison or a deadly weapon and assault in the third degree against a law enforcement officer. The State alleged the aggravated circumstance of a crime against police officer for purposes

4

of the assault in the second degree charge. At the beginning of trial, the trial court inquired whether the State charged the two assault counts in the alternative. The State's counsel responded, "I have not charged them in the alternative. . . . But they are most likely going to be alternatively charged." RP at 4.

During trial, Rusty Abrams objected, on ER 402 and 403 grounds, to the admission of his jail letter. The State argued that comments in the letter constituted a confession. In response, Abrams contended that the written remarks showed only awareness of the charges and did not comprise a confession.

Rusty Abrams particularly demurred to the jury reading or hearing the line from the letter that declared: "A Tank isn't what it used to be." RP at 241. According to Abrams, the line would inform the jury that he had sat in jail and might lead the jury to infer guilt. The State argued the "A Tank" line was admissible because the language assisted in identifying who wrote the letter. RP at 241. The trial court overruled Abrams' objection to the admissibility of the letter as an exhibit. The court reasoned that the jury would already infer that Abrams went to jail since the jury heard that Officer Patrick Canady pursued Abrams because of an outstanding warrant for his arrest. According to the trial court, any prejudice resulting from the "A Tank" statement was minimal.

5

During Officer Canady's testimony, the State elicited the following testimony:

[THE STATE:] Okay. And do you know Mr. Abrams?
A I do.
Q And have you had contact with Mr. Abrams in your professional capacity prior to April 27th of this year?
A Yes, I have.
Q Do you know how many times?
A I believe there was like three documented times. And then undocumented times, multiple. You know, you just stop and talk to him and . . .
Q Do you have those dates?
. . . .
A One of them was on 2-1 of 2014 on G Street Southeast.
Q Okay.
A Another one was on 8-19 of 2013. His friend was at their house burglarizing. That was—
THE COURT: No, you're—the question was just—
THE WITNESS: Sorry.
THE COURT:—times for contact, not a—
THE WITNESS: Sure.
THE COURT:—narrative of what took place.
THE WITNESS: Okay.
[THE STATE:] Judge, thank you.
Q: Go ahead.
A And then 5-1 of 2010 I had contact with him then too.
Q Okay. Now, were these contacts just a brief, walk-by contact? Or were they—
A No.
Q —face-to-face talking?
A They were face-to-face. They were calls or contacts with other officers with him.
Q Okay. And would it be fair to say that you know what Mr. Abrams looks like?
A Oh, yes.

RP at 262-64.

6

The State later elicited the following testimony from Officer Jack McLauchlan:

Q Now, do you know Rusty—or know of Rusty Abrams?
A Yes.
Q And have you had personal contact with him before?
A Yes.
Q Do you know what he looks like?
A Yes.

RP at 457-58.

Following a three-day trial, the trial court instructed the jury with regard to assault

in the second degree:

[t]o convict the defendant of the crime of assault in the second degree as charged in count 1, each of the following elements must be proved beyond a reasonable doubt:
(1) That on or about April 27, 2014, the defendant assaulted Patrick Canady;
(2) That the defendant acted with intent to inflict bodily harm;
(3) That the defendant acted by one or more of the following means or methods:
(a) The defendant used a deadly weapon; or
(b) The defendant administered to or caused to be taken by Patrick Canady, a noxious substance; and
(4) That any of these acts occurred in the State of Washington.

Clerk's Papers (CP) at 30. The trial court instructed the jury with regard to aggravating

circumstances:

If you find the defendant guilty of Assault in the Second Degree as charged in Count 1, then you must determine if the following aggravating circumstances exist:
Whether the crime was committed against a law enforcement officer who was performing his or her official duties at the time of the crime, and the defendant knew the victim was a law enforcement officer.

7

CP at 42. Finally, the court defined "knowledge" for the jury:

> A person knows or acts knowingly or with knowledge with respect to a fact, circumstance or result when he or she is aware of that fact, circumstance or result. It is not necessary that the person know that the fact, circumstance or result is defined by law as being unlawful or an element of a crime.
>
> If a person has information that would lead a reasonable person in the same situation to believe that a fact exists, the jury is permitted but not required to find that he or she acted with knowledge of that fact.
>
> When acting knowingly (as to a particular fact) is required to establish an element of a crime, the element is also established if a person acts intentionally as to that fact.

CP at 28.

The jury found Rusty Abrams guilty of assault in the second degree and assault in the third degree. The jury also found that the State of Washington proved aggravated circumstances. The trial court imposed an extraordinary sentence of ninety-six months in prison for second degree assault. The court also meted a sentence of sixty months for third degree assault, with both sentences to run concurrently.

At sentencing the trial court inquired into Rusty Abrams' ability to pay:

> [THE COURT:] Does he have the likely future ability to pay his financial obligations?
> [ABRAMS' COUNSEL:] When he's released, your Honor, I believe he'll be able to find employment. But I think that—that will be a— I believe he does. He has been employed.

RP (Dec. 16, 2014) at 55-56. The trial court imposed a total of $1,400 in legal financial obligations. The total obligations include a $500 victim assessment fee, a $200 criminal

8

filing fee, a $100 DNA collection fee, and $600 for court appointed attorney fees.

## LAW AND ANALYSIS

### Testimony of Officers' Earlier Contact with Rusty Abrams

We first address Rusty Abrams' assignments of evidentiary errors since we would

reverse both convictions and remand for a new trial if we agreed with one of these

assignments. Since Abrams did not object at trial to some of the testimony that he

contends should have been excluded, he argues that his trial counsel was ineffective for

failing to object. This testimony entails Officers Patrick Canady's and Jack

McLauchlan's recounting of previous interactions with Abrams. The State responds that

the officers' testimony did not establish criminal activity by Abrams such that defense

counsel was not ineffective for failing to object. The State also argues that, assuming the

testimony was inadmissible, any error was harmless. We conclude that Abrams' trial

counsel was not ineffective.

A claim of ineffective assistance of counsel requires a showing that (1) counsel's

performance was deficient, and (2) the deficient performance prejudiced the defendant.

*Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984);

*State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011); *State v. Hamilton*, 179 Wn.

App. 870, 879, 320 P.3d 142 (2014). This is a mixed question of law and fact, reviewed

de novo. *Strickland*, 466 U.S. at 698.

9

Under the deficiency prong, this court gives great deference to trial counsel's performance and begins the analysis with a strong presumption that counsel was effective. *State v. West*, 185 Wn. App. 625, 638, 344 P.3d 1233 (2015). Deficient performance is performance that fell below an objective standard of reasonableness based on consideration of all the circumstances. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). The defendant bears the burden to prove ineffective assistance of counsel. *McFarland*, 127 Wn.2d at 335.

Trial strategy and tactics cannot form the basis of a finding of deficient performance. *State v. Johnston*, 143 Wn. App. 1, 16, 177 P.3d 1127 (2007). The decision of when or whether to object is a classic example of trial tactics. *State v. Madison*, 53 Wn. App. 754, 763, 770 P.2d 662 (1989). Only in egregious circumstances, on testimony central to the State's case, will the failure to object constitute incompetence of counsel justifying reversal. *State v. Madison*, 53 Wn. App. at 763.

We do not reach the prejudice prong of ineffective assistance of counsel because trial counsel was not deficient for withholding an objection to the Ephrata police officers' respective testimony. Rusty Abrams argues that Officer Jack McLauchlan's testimony was irrelevant because he was not present when the assault occurred. The State does not respond to this argument, and instead argues that McLauchlan's testimony of prior

10

contacts did not prejudice Abrams since McLauchlan merely answered yes to a question. The lack of prejudice is underscored by Officer McLauchlan omitting any reference to the basis of the earlier contact. More importantly, the testimony was relevant because the earlier interaction laid a foundation for how McLauchlan later identified Abrams. The testimony was admissible and thus trial counsel was not ineffective.

Officer Patrick Canady, contrary to Jack McLauchlan, testified about his prior professional contacts with Rusty Abrams. This testimony implicates ER 404(b) because the testimony implies Abrams engaged in earlier criminal behavior.

ER 404(b) reads:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Prior contacts with police can be admissible ER 404(b) evidence if the State employs the evidence for a purpose other than showing a propensity to criminal conduct. During Rusty Abrams' trial, the principal factual question was the identity of the person who pepper sprayed Officer Patrick Canady. Thus, defense counsel would understand that Officer Canady's earlier intercourse with Abrams would be relevant and admissible over an ER 404(b) objection. In addition, since the jury learned that a warrant was issued for

11

the arrest of Rusty Abrams, the jury would already surmise that Abrams previously

engaged police officers. Given the trial court's prompt reminder to Officer Canady,

during the latter's testimony, to limit his description of interactions to dates, defense

counsel encountered no need to object. To the contrary, if defense counsel had objected,

the jury's attention might have been drawn to the professional nature of those contacts.

Because defense counsel possessed a legitimate strategic reason not to object, defense

counsel's failure to object was not deficient representation.

## "A Tank" Letter

Rusty Abrams next argues that the trial court abused its discretion by admitting the

portion of his jail letter that referred to "A Tank" because the line established that he

previously occupied jail. We do not address the merits of Abrams' argument, because,

assuming the trial court should have excluded the letter or the line from the letter, the

error is harmless. The jury was not told that "A Tank" is a section of jail. Therefore, the

jury would not likely conclude Abrams sat in jail.

Evidence that is substantially more prejudicial than probative is inadmissible. ER

403. Evidence of prior bad acts are not admissible to show propensity to commit crimes.

ER 404(b). When an error arises from a violation of an evidentiary rule, not a

constitutional mandate, this court applies the rule that error is not prejudicial unless,

within reasonable probabilities, the outcome of the trial would have been materially

12

affected had the error not occurred. *State v. Howard*, 127 Wn. App. 862, 871, 113 P.3d
511 (2005) (quoting *State v. Bourgeois*, 133 Wn.2d 389, 403, 945 P.2d 1120 (1997)).
Because the jury did not hear the nature of "A Tank," we conclude the evidence likely
did not impact the outcome of the case. Overwhelming other evidence established that
Rusty Abrams squirted the pepper spray that disabled Officer Patrick Canady.

### Double Jeopardy

Rusty Abrams contends that his convictions of both assault in the second degree
and assault in the third degree for the same conduct violated double jeopardy. The State
concedes that the third degree assault conviction should be vacated. We agree and vacate
the lesser charge of third degree assault.

Claims of double jeopardy are questions of law, which we review de novo. *State
v. Hughes*, 166 Wn.2d 675, 681, 212 P.3d 558 (2009). Double jeopardy may be
implicated when multiple convictions arise out of the same act, even if concurrent
sentences have been imposed. *State v. Calle*, 125 Wn.2d 769, 774-75, 888 P.2d 155
(1995). On appeal, the undisputed facts show that the trial court convicted Rusty Abrams
twice for the same conduct, the release of pepper spray. The concurrent sentences for the
two crimes do not cure the double jeopardy violation.

13

STATEMENT OF ADDITIONAL GROUNDS

Rusty Abrams raises two errors in his statement of additional grounds: (1) the trial court imposed discretionary legal financial obligations without conducting an individualized inquiry into his ability to pay, and (2) the jury instruction explaining the nature of knowledge relieved the State of proving a portion of the mens rea requirement for the aggravating factor. A criminal defendant can submit a pro se statement of additional grounds for review of issues he believes have not been adequately addressed by the brief filed by the defendant's appellate counsel. RAP 10.10(a).

Legal Financial Obligations

Rusty Abrams challenges the imposition of discretionary legal financial obligations because he lacks the present or future ability to pay. We disagree and affirm the award of discretionary financial obligations.

Courts may impose financial obligations if a defendant has or will have the financial ability to pay them. RCW 10.01.160; RCW 9.94A.760(2); *State v. Curry*, 118 Wn.2d 911, 914, 829 P.2d 166 (1992). RCW 10.01.160(3) provides:

> The court shall not order a defendant to pay costs unless the defendant is or will be able to pay them. In determining the amount and method of payment of costs, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose.

In *State v. Blazina*, 182 Wn.2d 827, 838, 344 P.3d 680 (2015) our Supreme Court

14

clarified that RCW 10.01.160(3) requires the trial court to do more than sign a judgment and sentence with boilerplate language stating that it engaged in the required inquiry. Rather, the record must reflect that the trial court made an individualized inquiry into the defendant's current and future ability to pay. *Blazina*, 182 Wn.2d at 838. Rusty Abrams' sentencing court inquired on the record whether Rusty Abrams would be able to pay the financial obligations, and his defense counsel responded that Abrams would be able to find employment. This inquiry, though sparse, addressed Abrams' individual circumstances and showed that Abrams likely had a future ability to pay $600 in discretionary legal financial obligations.

Knowledge Instruction

Rusty Abrams next argues that the jury instruction defining knowledge created a mandatory presumption that he intended to cause harm because he must have known that Officer Patrick Canady was a law enforcement officer. In turn, Abrams argues the instruction relieved the State of its burden to prove all of the elements of the charges beyond a reasonable doubt. The State argues that the amended pattern instruction language did not create a mandatory presumption.

Rusty Abrams did not object to the jury instruction before the trial court. Therefore, as a threshold matter, this court must determine whether to review the issue. We decline to entertain the assignment of error because Abrams fails to show prejudice,

15

assuming any error.

RAP 2.5(a) states "[t]he appellate court may refuse to review any claim of error which was not raised in the trial court." One exception to that general rule is when a manifest error affects a constitutional right. RAP 2.5(a)(3). The last step in a manifest constitutional error analysis is whether any error was harmless. *State v. Barr*, 123 Wn. App. 373, 380, 98 P.3d 518 (2004).

Rusty Abrams' defense centered on the argument that Officer Patrick Canady did not have the opportunity to identify him during early morning April 27, 2014. The evidence was overwhelmingly to the contrary. Patrick Canady knew Abrams from multiple previous encounters. Canady shown his light on Abrams, while the latter walked along the street. During the chase, the patrol car's lights flashed. Canady came within ten feet of Abrams during the pursuit. Abrams knew Officer Patrick Canady was a law enforcement officer. The two had met before. Officer Canady activated his patrol car lights. He wore his uniform.

## CONCLUSIONS

We vacate Rusty Abrams' conviction for third degree assault, but affirm his conviction for second degree assault. We remand to the trial court for resentencing based on the vacation of the one conviction.

16

No. 32982-8-III
*State v. Abrams*

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Fearing, C.J.

WE CONCUR:

_____               _____
Korsmo, J.                                     Siddoway, J.

17