150 P.3d 105 (2007)
STATE of Washington, Respondent,
v.
Danny Wayne EVANS, Petitioner.
No. 77700-4.
Supreme Court of Washington, En Banc.
Argued October 19, 2006.
Decided January 11, 2007.
*107 John A. Hays, Longview, WA, for Petitioner.
Susan Irene Baur, Cowlitz Co. Prosecutor's Office, Kelso, WA, for Respondent.
ALEXANDER, C.J.
¶ 1 Danny Evans denied ownership of a briefcase that was located in the backseat of his truck. Police officers seized the briefcase and discovered materials in it that lead to Evans's conviction on charges of manufacturing methamphetamine and possession of methamphetamine with an intent to deliver. Before trial, Evans's motion to suppress the evidence obtained as a consequence of the warrantless seizure of his briefcase was denied by the trial court. In doing so, it concluded that Evans's denial of ownership of the briefcase constituted abandonment of it. Evans thereafter was found guilty of the charges against him. The Court of Appeals subsequently affirmed the convictions. We granted review and now reverse the Court of Appeals.

I. Factual and Procedural History
¶ 2 Danny Evans owned a house and a converted garage in Cowlitz County, Washington. The house was rented to another person, but only Evans had access to the garage. The Cowlitz-Wahkiakum Narcotics Task Force executed a warrant, which authorized a search of the house and garage.
¶ 3 Evans was present during the search of the garage. After the police officers found materials consistent with the production of methamphetamine in the garage, they arrested Evans and placed him in a patrol car. Evans remained in the patrol car while the search continued. One of the police officers, Sergeant Kevin Tate, contacted Evans in the car and read him his "Miranda[1] warnings." DVD Taped Proceedings at 56. Evans indicated that he understood his rights and told Tate that he "didn't want to talk about any details." Id.
¶ 4 Tate then asked Evans for permission to search Evans's truck, which was parked in a driveway leading to the house. Evans agreed to permit the search after Tate made it clear that the warrant did not cover the truck and that it, therefore, could not be searched without Evans's permission. Evans indicated that his agreement was contingent upon being allowed to observe the search and object to any part of it.
¶ 5 During a search of the truck, Tate located a silver briefcase in the backseat. Because it was locked, Tate asked Evans if he had a key. Evans did not respond. Tate then asked if the briefcase belonged to Evans. Evans denied owning it and said that he could not give Tate permission to open the *108 briefcase and that he objected to it being seized. Despite Evans's objection, Tate seized the briefcase. Several days later, the briefcase was searched pursuant to a warrant. It contained additional materials consistent with the production of methamphetamine.[2]
¶ 6 Evans was thereafter charged with one count of manufacture of a controlled substance and one count of possession of a controlled substance with intent to deliver. He was found guilty of both charges. On appeal to the Court of Appeals, Evans argued, as he had at trial, that the briefcase was illegally seized. He contended, therefore, that any evidence found in it should have been suppressed. The Court of Appeals disagreed with Evans, holding that his denial of ownership of the briefcase amounted to a voluntary abandonment of it. It affirmed the convictions. We granted Evans's petition for review.

II. Standard of Review
¶ 7 We conduct a de novo review of conclusions of law set forth in a suppression order. See, e.g., State v. Duncan, 146 Wash.2d 166, 171, 43 P.3d 513 (2002).

III. Issue Presented
¶ 8 Does a defendant's denial of ownership of an object that is seized in an area where he has a privacy interest constitute voluntary abandonment of that object?

IV. Analysis
¶ 9 Initially we note that we agree with the Court of Appeals that Evans has standing to challenge the seizure of the briefcase. State v. Evans, 129 Wash.App. 211, 221, 118 P.3d 419 (2005), review granted, 157 Wash.2d 1001, 136 P.3d 758 (2006). In Washington, a defendant has "`automatic standing'" to challenge the legality of a seizure "even though he or she could not technically have a privacy interest in such property." State v. Simpson, 95 Wash.2d 170, 175, 622 P.2d 1199 (1980) (affirming automatic standing under Washington Constitution article 1, section 7, notwithstanding the United States Supreme Court's decision to abolish the automatic standing rule under the Fourth Amendment in United States v. Salvucci, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980)); accord State v. Williams, 142 Wash.2d 17, 23, 11 P.3d 714 (2000). Evans meets both parts of the test for automatic standing: (1) possession was an "`essential' element of the offense," and (2) he "was in possession of the contraband at the time of the contested search or seizure." Simpson, 95 Wash.2d at 181, 622 P.2d 1199 (describing two part test). We next turn to the constitutionality of the seizure of the briefcase.
¶ 10 It is undisputed that the search of Evans's truck and the seizure of the briefcase found within it was warrantless. Warrantless searches and seizures may be permitted within the confines of "`a few specifically established and well-delineated exceptions'" to the warrant requirements of the fourth amendment to the United States Constitution and Washington Constitution article I, section 7. State v. Chrisman, 100 Wash.2d 814, 817, 676 P.2d 419 (1984) (quoting Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)). The exceptions are " ` "jealously and carefully drawn" ' " and the "burden rests with the State to prove the presence of one." State v. Hendrickson, 129 Wash.2d 61, 72, 71, 917 P.2d 563 (1996) (quoting State v. Bradley, 105 Wash.2d 898, 902, 719 P.2d 546 (1986) (citing Coolidge v. New Hampshire, 403 U.S. 443, 454, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971))).
¶ 11 One of the exceptions to the warrant requirement is for voluntarily abandoned property.[3]State v. Reynolds, 144 *109 Wash.2d 282, 287, 27 P.3d 200 (2001). As we explained in Reynolds, "Needing neither a warrant nor probable cause, law enforcement officers may retrieve and search voluntarily abandoned property without implicating an individual's rights under the Fourth Amendment or under article I, section 7 of our state constitution." Id.
¶ 12 A defendant's privacy interest in property may be abandoned voluntarily or involuntarily. Involuntary abandonment occurs when property was abandoned as a result of illegal police behavior. See, e.g., State v. Reichenbach, 153 Wash.2d 126, 137, 101 P.3d 80 (2004). Because neither party has argued that Evans involuntarily abandoned the briefcase, we assume that whatever actions he took in regard to the briefcase were voluntary and that other aspects of the search and seizure were proper. See, e.g., State v. Zakel, 119 Wash.2d 563, 567, 834 P.2d 1046 (1992) (holding that this court has "repeatedly stated that we will not decide a constitutional issue unless it is absolutely necessary for the determination of a case"). Thus, we must determine if Evans abandoned the briefcase voluntarily.
¶ 13 Voluntary abandonment is an ultimate fact or conclusion based generally upon a combination of act and intent. 1 Wayne R. LaFave, Search and Seizure § 2.6(b), at 574 (3d ed.1996). "Intent may be inferred from words spoken, acts done, and other objective facts, and all the relevant circumstances at the time of the alleged abandonment should be considered." State v. Dugas, 109 Wash.App. 592, 595, 36 P.3d 577 (2001). The issue is not abandonment in the strict property right sense but, rather, "`whether the defendant in leaving the property has relinquished her reasonable expectation of privacy so that the search and seizure is valid.'" Id. (quoting United States v. Hoey, 983 F.2d 890, 892-93 (8th Cir.1993)); see also United States v. Nordling, 804 F.2d 1466 (9th Cir.1986). Thus, Evans must show a reasonable expectation of privacy in the briefcase and that he did not voluntarily abandon it.

A. Did Evans have an expectation of privacy in the briefcase prior to its seizure?
¶ 14 To establish that he had a reasonable expectation of privacy in the contents of the briefcase, Evans must satisfy a two fold test: (1) Did he "exhibit an actual (subjective) expectation of privacy by seeking to preserve something as private?" and (2) "[d]oes society recognize that expectation as reasonable?" State v. Kealey, 80 Wash.App. 162, 168, 907 P.2d 319 (1995). Evans satisfies both parts of this test. Although the burden is on the defendant to establish a subjective expectation of privacy, he easily meets that burden. He kept the briefcase in his truck, it was closed and locked, and he objected to its seizure. Compare State v. Hepton, 113 Wash.App. 673, 680, 54 P.3d 233 (2002) (leaving garbage at an abandoned house did not show a subjective expectation of privacy). Evans satisfies the second part of the test because society recognizes a general expectation of privacy in briefcases. See Kealey, 80 Wash.App. at 170, 907 P.2d 319 ("Purses, briefcases, and luggage constitute traditional repositories of personal belongings protected under the Fourth Amendment.") (citing Arkansas v. Sanders, 442 U.S. 753, 762, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979)).

B. Did Evans relinquish or abandon his expectation of privacy?
¶ 15 The status of the area searched is critical when one engages in an analysis of whether or not a privacy interest has been abandoned. That is so because courts do not ordinarily find abandonment if the defendant had a privacy interest in the searched area. See, e.g., Dugas, 109 Wash. App. at 596, 36 P.3d 577 (holding defendant did not voluntarily abandon his jacket by placing it on the hood of his car after being arrested). The opposite generally holds true if the search is conducted in an area where the defendant does not have a privacy interest. See, e.g., Reynolds, 144 Wash.2d 282, 27 P.3d 200 (seizure of a jacket containing contraband found underneath vehicle stopped for traffic infraction was reasonable after *110 defendant denied ownership); State v. Young, 86 Wash.App. 194, 935 P.2d 1372 (1997) (seizure of drugs thrown in bushes by defendant prior to his arrest was proper because it amounted to abandonment), aff'd, 135 Wash.2d 498, 957 P.2d 681 (1998). When considering the effect of a denial of ownership, Washington courts have only directly addressed the latter scenario when a defendant has no privacy interest in the searched area. Evans, however, falls into the former.
¶ 16 Washington's case law related to situations like we have here is somewhat limited. There are, however, two cases that help guide our analysis. In State v. Goodman, 42 Wash.App. 331, 711 P.2d 1057 (1985), the defendant, Goodman, disclaimed ownership of a suitcase found by officers in the trunk of his car after he was stopped while driving. The court held there that the evidence found in the suitcase was inadmissible on other grounds, so its treatment of the abandonment issue is arguably dicta. Nonetheless, the court noted that denial of ownership did not amount to abandonment. See id. at 335, 711 P.2d 1057 ("The State's assertions of voluntary abandonment and police exercise of the community care-taking function are without factual support."); id. at 341, 711 P.2d 1057 ("The facts before us indicate no grounds for a warrantless search of the suitcase."). Furthermore, in Zakel, Justice Robert F. Utter noted in his majority opinion that "disclaimer of ownership would not be sufficient by itself to justify saying Zakel was not in possession of the [car] at the time of the search." Zakel, 119 Wash.2d at 570, 834 P.2d 1046 (addressing automatic standing tests' possessory interest prong).
¶ 17 The Goodman and Zakel decisions suggest to us that a denial of ownership, by itself, did not divest Evans of his privacy interest in the briefcase. But as the Court of Appeals noted, "our courts have not analyzed whether one can disclaim property but still challenge a later search, where the disclaimed property remained in an area where one has a reasonable expectation of privacy." Evans, 129 Wash.App. at 222, 118 P.3d 419. As a result, we consider the guidance offered by Goodman and Zakel in the context of how courts in other jurisdictions have approached a disclaimer of ownership.
¶ 18 A survey of decisions from these other jurisdictions supports a recognition that Evans retained a privacy interest in the briefcase. These courts have concluded that a defendant's denial of ownership does not divest him or her of a privacy interest in that property, provided the search takes place in an area where the defendant had a privacy interest. For example, in State v. Huether, 453 N.W.2d 778 (N.D.1990), the defendant denied ownership of a bag that was found stuffed under the front seat of his car. The court noted there that the defendant had not discarded the property in a public area, but rather that it was located in an area in which he retained a privacy interest, his car. The court said, as a result, "[t]here is little doubt that Huether had an expectation of privacy in his vehicle and in every container therein that concealed its contents from plain view." Id. at 781. Like Huether, Evans did not discard the briefcase and he retained a privacy interest in the car that was searched.
¶ 19 The holding in Huether is consistent with the rulings of other state courts. The Illinois Supreme Court, for example, has indicated that the court must look at "`the totality of the circumstances, but pay particular attention to explicit denials of ownership and to any physical relinquishment of the property.'" People v. Pitman, 211 Ill.2d 502, 813 N.E.2d 93, 105, 286 Ill.Dec. 36 (2004) (quoting United States v. Basinski, 226 F.3d 829, 836-37 (7th Cir.2000)). But when Illinois courts pay close attention to a disclaimer of ownership, the presence of one is not sufficient, by itself, to demonstrate voluntary abandonment. See, e.g., People v. Lee, 226 Ill.App.3d 1084, 590 N.E.2d 1000, 1002, 169 Ill.Dec. 81 (1992) (confirming privacy interest for purposes of standing). For example, when a defendant denied ownership of a bag stuffed under the front seat of his car, it did not constitute voluntary abandonment. Id. New York's highest court has reached a similar conclusion, indicating that "[s]tanding alone, the surrender of control or disclaimer of ownership does not always establish a waiver." People v. Ramirez-Portoreal, 88 *111 N.Y.2d 99, 666 N.E.2d 207, 213, 643 N.Y.S.2d 502 (1996) (citing 1 LaFave, supra, § 2.6(b)).
¶ 20 The language in the Washington cases cited above and the decisions cited in other jurisdictions is consistent with the privacy protections guaranteed by Washington's constitution. As we have observed in other cases, article I, section 7 of our state constitution provides a strong privacy interest, exceeding that provided by the federal constitution. See Simpson, 95 Wash.2d 170, 622 P.2d 1199. Consequently, in State v. Boland, 115 Wash.2d 571, 800 P.2d 1112 (1990), we held that garbage in a curbside garbage container is not abandoned and police, therefore, needed a warrant to search it.[4] Even under federal law, mere denial of ownership does not necessarily constitute abandonment. See United States v. Simpson, 439 F.3d 490, 494 (8th Cir.2006) ("courts typically consider two critical factorswhether the defendant physically relinquished, and denied ownership over, the challenged evidence"); United States v. Burnette, 698 F.2d 1038, 1048 n. 19 (9th Cir.1983) ("The majority of previous cases in which the courts have upheld a finding of abandonment have involved both a denial of ownership or interest in the property and a physical relinquishment of the property."); but see United States v. Thomas, 12 F.3d 1350 (5th Cir.1994) (denying ownership is sufficient to establish voluntary abandonment).
¶ 21 We are persuaded by the language found in the Goodman and Zakel cases and confirmed in the decisions of courts in other jurisdictions that disclaiming ownership is not sufficient, by itself, to constitute abandonment. The circumstances surrounding the disclaimer of ownership dictate whether a defendant has abandoned his or her property. In the circumstances here, Evans had a privacy interest in the area searched, the item that was seizedthe briefcasewas locked, and he objected to its seizure. The fact that Evans denied ownership of the briefcase is not, by itself, sufficient to exhibit the combination of act and intent of abandonment in light of those circumstances. 1 LaFave, supra, § 2.6(b), at 574 (discussing act and intent).

V. Conclusion
¶ 22 Is sum, a defendant who denies ownership of an item, located in an area in which he has a privacy interest, has not voluntarily abandoned the property. The defendant's motion to suppress should, therefore, have been granted. We reverse the Court of Appeals and remand for a new trial.
WE CONCUR: CHARLES W. JOHNSON, BARBARA A. MADSEN, RICHARD B. SANDERS, BOBBE J. BRIDGE, TOM CHAMBERS, SUSAN OWENS, MARY E. FAIRHURST, JAMES M. JOHNSON, JJ.
NOTES
[1] Miranda v. Arizona, 396 U.S. 868, 90 S.Ct. 140, 24 L.Ed.2d 122 (1969).
[2] The briefcase contained scales, a bag of red powder, and a white crystal substance. Witnesses for the State testified that the substance was methamphetamine.
[3] Consent also serves as a valid exception. See, e.g., State v. Hendrickson, 129 Wash.2d 61, 71, 917 P.2d 563 (1996) ("The exceptions to the requirement of a warrant have fallen into several broad categories: consent, exigent circumstances, searches incident to a valid arrest, inventory searches, plain view, and Terry investigative stops."). See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Here, Evans consented to a search of his truck, but not the seizure of the briefcase. As a result, we focus our inquiry on the seizure.
[4] In contrast, the Fourth Amendment's protections do not extend to curbside garbage. California v. Greenwood, 486 U.S. 35, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988).