IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32146-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MARSHALL L. STORY, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, C.J. — Marshall Story appeals his convictions for first degree

possession of a firearm and possession of a stolen firearm. At trial, the critical State's

evidence were photographs obtained from a thumb drive found inside Mr. Story's

backpack. The backpack had been found in the trunk of a car that had been rented by Mr.

Story. Officers searched the backpack and the thumb drive inside for the purpose of

identifying the backpack's owner. They quickly confirmed the backpack belonged to Mr.

Story.

Nonetheless, the officers' search of the thumb drive continued, revealing an

incriminating photograph of Mr. Story with a firearm. That photograph was relied upon

in obtaining a search warrant for the thumb drive that led to the recovery of additional

incriminating photographs.

Because the photographs relied upon by the State were all traceable to an initial search of the thumb drive that did not fall within any exception to the warrant requirement, they should have been supressed. Without the illegally recovered photographs, there was insufficient evidence to support either conviction. Accordingly, we reverse and remand with instructions to dismiss both convictions with prejudice.

## FACTS

On February 11, 2013, a Garfield County Deputy Sheriff made a traffic stop on a Chevy Impala. Upon investigation, the deputy learned that the driver of the car did not have a valid driver's license. The deputy placed the driver under arrest for driving with a suspended license. An undersheriff who was with the deputy questioned the passenger in the car, Marshall Story. Mr. Story, a convicted felon, did not have a valid driver's license. Because Mr. Story's license was also suspended, he would eventually be provided a ride to the sheriff's office, where he could wait for a friend to pick him up.

Before Mr. Story was provided a ride to the sheriff's office though, the deputy instructed him to remove all personal property from the car. Mr. Story responded by stating that the only things that belonged to him were a box of coloring pens and a coloring book located in the backseat. The deputy, seeing other items in the backseat, specifically inquired whether these other items belonged to either Mr. Story or the driver. Mr. Story and the driver both denied knowledge of the other items. The undersheriff then

asked whether Mr. Story or the driver "[had] anything in the trunk they would like to get out. Both [Mr. Story] and [the driver] stated 'no.'" Clerk's Papers (CP) at 264-65.

The vehicle was left at the location of the traffic stop. Officers later determined the car was a rental.

The next day, an agent from the rental car company was contacted. In order to retrieve the car, the agent and his wife met the sheriff and officers involved in the traffic stop the night before. Before leaving with the car, the agent "stated that he did not [want] to be responsible for the property left in the vehicle." CP at 265. The agent "was told that he could take the property out of the vehicle and set it on the side of the road." *Id.*

While removing property from the vehicle, the agent's wife found a black Walther P22 handgun in the trunk under the spare tire. The serial number on the gun had been "ground off." *Id.* Officers secured the gun.

The remainder of the property found in the car, including a black leather backpack found in the trunk, was placed on the side of the road. Officers then collected the property from the side of the road and transported it back to the sheriff's office. At the sheriff's office, the deputy "was looking through the black leather backpack to determine who the owner" was. *Id.* Inside the backpack, the deputy found a thumb drive. He "plugged [the thumb drive] into a computer and viewed pictures stored on the [device]." *Id.* Upon inserting the thumb drive into the computer, three file folders were available,

3

one of which was titled "Big Marsh's Photos." CP at 268; Report of Proceedings (RP)

(Dec. 12, 2013) at 252.

> According to the deputy's affidavit:
>
> I found two family pictures with Marshall [Story] in them and also by himself. I saw a picture of Marshall's Idaho state identification card and also a picture of Michael Lawrence Provost Washington state Driver's License, front and back. The next picture I viewed was a picture of the Walther P22 hand gun and could see the serial number ground off. At this point I did not view any further.

CP at 265.

Based on these facts, the deputy applied for a search warrant, believing that the

thumb drive contained evidence of Mr. Story's unlawful possession of a firearm. A

search warrant was granted.

Upon execution of the warrant, the deputy viewed all the photos on the thumb

drive. Specifically, he "viewed numerous photos of Marshall Story holding a Walther

P22 firearm, which appear[ed] to be the same firearm recovered from the trunk of the

2013 Chevy Impala. Similarities includ[ed]: Manufacture, caliber, ground serial number,

holster and magazines." CP at 268.

The State charged Mr. Story with unlawful possession of a firearm in the first

degree. Further investigation led to evidence indicating the firearm was stolen. The

information was amended to include a charge for possession of a stolen firearm.

4

Mr. Story moved to suppress evidence obtained from the warrantless search of the backpack. The court denied the motion, finding the backpack was abandoned. A jury found Mr. Story guilty of both charges. Mr. Story timely appeals.

ANALYSIS

Mr. Story challenges the trial court's denial of his motion to suppress. He argues that the warrantless search of his backpack did not fall within any exception to the warrant requirement. As a result, the search warrant for the thumb drive should not have been issued. He argues further that absent the photographic evidence obtained from the thumb drive, there was insufficient evidence to support the two convictions. We address these arguments in turn.

*I. Warrantless search of the backpack*

Mr. Story argues that the warrantless search of the black leather backpack violated both the Fourth Amendment of the United States Constitution and article I, section 7 of the Washington Constitution.

"We review the validity of a warrantless search de novo." *State v. Dugas*, 109 Wn. App. 592, 595, 36 P.3d 577 (2001).

When a party alleges violations of both the Fourth Amendment and article I, section 7, we analyze the Washington State Constitution first because it is more protective of individual privacy. *State v. MacDicken*, 179 Wn.2d 936, 940, 319 P.3d 31 (2014) (citing *State v. Walker*, 157 Wn.2d 307, 313, 138 P.3d 113 (2006)). Under article

I, section 7, "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." WASH. CONST. art. I, § 7. A warrantless search or seizure violates section 7. *MacDicken*, 179 Wn.2d at 940.

A warrantless search or seizure may be "permitted within the confines of 'a few specifically established and well-delineated exceptions' to the warrant requirements." *State v. Evans*, 159 Wn.2d 402, 407, 150 P.3d 105 (2007) (internal quotation marks omitted) (quoting *State v. Chrisman*, 100 Wn.2d 814, 817, 676 P.2d 419 (1984)). One such exception permits a law enforcement officer to conduct a warrantless search of property that has been voluntarily abandoned. *See id.* at 407-08; *State v. Reynolds*, 144 Wn.2d 282, 287, 27 P.3d 200 (2001). Another exception to the warrant requirement is a search of misplaced property for the purpose of identifying the true owner. *See State v. Kealey*, 80 Wn. App. 162, 174-75, 907 P.2d 319 (1995).

A. The backpack was not voluntarily abandoned.

"Needing neither a warrant nor probable cause, law enforcement officers may retrieve and search voluntarily abandoned property without implicating an individual's rights under the Fourth Amendment or under article I, section 7 of our state constitution." *Evans*, 159 Wn.2d at 408 (quoting *Reynolds*, 144 Wn.2d at 287). Voluntary abandonment is an ultimate fact or conclusion based generally upon a combination of act and intent. *Id.* at 408. "Intent may be inferred from words spoken, acts done, and other objective facts, and all the relevant circumstances at the time of the alleged abandonment

6

should be considered." *Dugas*, 109 Wn. App. at 595. The issue is not abandonment in the strict property right sense, but rather, "'whether the defendant in leaving the property has relinquished [his or] her reasonable expectation of privacy so that the search and seizure is valid.'" *Evans*, 159 Wn.2d at 408 (quoting *United States v. Hoey*, 983 F.2d 890, 892-93 (8th Cir. 1993)).

We engage in a two-part inquiry to determine whether property has been abandoned: first, whether the defendant had a reasonable expectation of privacy in the item seized; and second, whether the defendant voluntarily abandoned the expectation of privacy. *Id.* at 408-09.

Here, the trial court concluded the backpack had been abandoned, and as a result, officers were permitted to conduct a warrantless search. We review a trial court's decision on a motion to suppress to determine whether the findings are supported by substantial evidence and whether those findings, in turn support the conclusions of law. *State v. O'Neill*, 148 Wn.2d 564, 571, 62 P.3d 489 (2003).

a. Reasonable expectation of privacy

The defendant bears the burden of showing that he had an actual subjective expectation of privacy, and that his expectation was objectively reasonable. *Evans*, 159 Wn.2d at 409.

Here, the backpack was kept in the locked trunk of a car that had been rented by Mr. Story—an area under his temporary control and out of public view. This in itself

exhibits the owner of the backpack had a subjective expectation of privacy in the property. Additionally, society recognizes a general objective expectation of privacy in backpacks because they are "repositories of personal belongings." *See Kealey*, 80 Wn. App. at 170; *see also Evans*, 159 Wn.2d at 409. Mr. Story demonstrated he had a reasonable expectation of privacy in the backpack.

   b. The expectation of privacy was not abandoned

In determining whether a defendant voluntarily abandoned his or her reasonable expectation of privacy, a court should consider the status of the area searched. *Evans*, 159 Wn.2d at 409-10. "Generally, no abandonment will be found if the searched item is in an area where the defendant has a privacy interest." *State v. Hamilton*, 179 Wn. App. 870, 885, 320 P.3d 142 (2014); *Evans*, 159 Wn.2d at 409. By contrast, "abandonment generally will be found if the defendant has no privacy interest in the area where the searched item is located." *Hamilton*, 179 Wn. App. at 886; *Evans*, 159 Wn.2d at 409-10. Another factor to consider is whether the defendant disclaimed ownership of the item. *Hamilton*, 179 Wn. App. at 885. While a disclaimer of ownership is significant, it alone is insufficient to establish that a defendant voluntarily abandoned property. *Evans*, 159 Wn.2d at 412-13. The circumstances surrounding the disclaimer determine whether a defendant has abandoned property. *Id.*

To begin with, there was no express disclaimer of ownership of the backpack. At the time of the traffic stop, when asked whether there was anything he *would like to get*

*out of the trunk*, Mr. Story simply responded no. Officers did not know there was a backpack in the trunk, let alone ask whether the backpack belonged to anyone. Mr. Story did not expressly disclaim ownership of the backpack.

The State argues that there was a disclaimer, but even a disclaimer may not amount to an abandonment of property. In *Evans*, the court determined that a defendant's express disclaimer of ownership of a locked briefcase in the backseat of a truck did not amount to an abandonment of the property. The totality of the circumstances indicated that the briefcase was not abandoned. Similarly, in *Kealey*, the court determined that a defendant who left her purse behind in a department store while shopping did not abandon the property. Rather, the store became a bailee for the lost or mislaid purse and the true owner retained an expectation of privacy.

Here, the backpack was left in the trunk of the car. An employee of the rental car company and his wife—not wanting to be bailees for the property—placed the property on the side of the road per instructions from the law enforcement officers. *Id.* The State argues that because it picked up the backpack off the side of the street, the backpack should be considered abandoned.

This argument, however, must fail. Law enforcement officers were present when the rental car agents placed the property on the side of the street and were thus aware that the backpack had been removed from the trunk. *Id.* With knowledge that the backpack had been kept in the trunk of the car, officers should have been aware that the owner of

the backpack did not intend to abandon the backpack. Like the purse in *Kealey*, which was not abandoned even though it was left behind at a department store, the backpack here was not abandoned.

There was a reasonable expectation of privacy in the backpack. Mr. Story's intent, as evidenced by where the backpack was kept and the circumstances surrounding the search, indicate that Mr. Story did not abandon the backpack. As a result, the abandonment exception to the warrant requirement does not apply. Substantial evidence does not support the trial court's conclusion that the backpack was abandoned.

B. Purposes of identifying the owner

The State argues that even if the backpack was not abandoned, the warrantless search of the backpack was authorized for purposes of identifying the owner of the backpack. It relies on *Kealey* and RCW 63.21.060 in support of its argument.

Under RCW 63.21.060 "Any governmental entity that acquires lost property shall attempt to notify the apparent owner of the property." In *Kealey*, a store clerk discovered a purse left behind by a customer. 80 Wn. App. at 165-66. The assistant store manager, observing drug paraphernalia inside the purse, alerted the police and informed them that the purse contained potentially inculpatory evidence. The police searched the purse for purposes of identifying the owner. *Id.* at 166. The defendant, owner of the purse, sought to suppress evidence obtained from the warrantless search. *Id.* at 167. The appellate court, determining that the search was valid, recognized "[t]he coexistence of

10

investigatory and administrative motives does not invalidate the lawful search for identification." *Id.* at 175. The court held that "searching lost or mislaid property for identification is an exception that makes reasonable a warrantless search." *Id.* at 174-75.

Under RCW 63.21.060 and *Kealey*, the police had a duty to ascertain who the owner of the property was. Here, the police were aware that the car had been rented by Mr. Story. In a further attempt to determine the owner of the backpack, they searched the backpack and found the thumb drive. They looked on the thumb drive to see if there was any information that might lead them to the owner. *Id.* The first photos observed were located in a folder titled "Big Marsh's Photos" and were pictures of Mr. Story and his family.

The officers, already familiar with Mr. Story from the initial stop, could have stopped searching at this point and returned the backpack to Mr. Story. Rather than concluding the search, though, the officers continued looking through Mr. Story's photos. The search exceeded the scope of what was required to fulfill the officers' administrative duty.

Unlike the officers in *Kealey*, who viewed potentially incriminating evidence while searching for identification, the officers here had already identified who the likely owner of the backpack was. After determining that the thumb drive and backpack likely belonged to Mr. Story, any continued search on the part of the officers became solely investigatory in nature and was invalid absent a warrant.

11

The warrantless search of the backpack exceeded the scope of the permitted search because police had already ascertained that Mr. Story was likely the owner of the backpack.

## *II. The photographs must be suppressed as fruit of an illegal search*

Mr. Story argues that because the officer's initial search of the thumb drive was invalid, the trial court erred in granting the search warrant based on an affidavit of probable cause reciting the illegally obtained information.

Pursuant to CrR 2.3, a search warrant "may be issued only if the court determines there is probable cause for the issuance of a warrant." CrR 2.3(c). "Probable cause exists when the affidavit in support of the search warrant 'sets forth facts and circumstances sufficient to establish a reasonable inference that the defendant is probably involved in criminal activity and that evidence of the crime may be found at a certain location.'" *State v. Ollivier*, 178 Wn.2d 813, 846-47, 312 P.3d 1 (2013), *cert. denied*, 135 S. Ct. 72, 190 L. Ed. 2d 65 (2014) (quoting *State v. Jackson*, 150 Wn.2d 251, 264, 76 P.3d 217 (2003)). When evidence obtained illegally is used on an affidavit to establish probable cause, the court is not permitted to consider the evidence in its probable cause determination. *State v. Salinas*, 121 Wn.2d 689, 691-92, 853 P.2d 439 (1993); *see also State v. Young*, 123 Wn.2d 173, 195-96, 867 P.2d 593 (1994). "The determination whether the qualifying information amounts to probable cause is a legal question that is reviewed de novo." *Ollivier*, 178 Wn.2d at 848.

12

Absent probable cause, a search is impermissible under both article I, section 7 of the Washington Constitution and the Fourth Amendment of the United States Constitution. *State v. Gaines*, 154 Wn.2d 711, 716-17, 116 P.3d 993 (2005). When evidence is obtained in violation of article I, section 7, the evidence must be excluded. "[E]vidence seized during an illegal search is suppressed under the exclusionary rule. In addition, evidence derived from an illegal search may also be subject to suppression under the fruit of the poisonous tree doctrine." *Id.*; *see also State v. Ridgway*, 57 Wn. App. 915, 920, 790 P.2d 1263 (1990) (If "the showing of probable cause was dependent on information gained during an unlawful search, all of the evidence seized pursuant to the warrant [is] tainted and, therefore, inadmissible").

Here, the affidavit in support of probable cause was based in part on the illegally obtained information. Namely, the affidavit explained that after viewing photos of Mr. Story and his family, "[t]he next picture I viewed was a picture of the Walther P22 hand gun and could see the serial number ground off." CP at 265. Because this information was obtained outside of the scope of the law enforcement's right to act administratively, the information should not have been considered in the trial court's probable cause determination. *See Young*, 123 Wn.2d at 196.

Absent the illegally obtained information, the affidavit explains that Mr. Story was a passenger in the rental car, that Mr. Story was a convicted felon, that neither Mr. Story nor the driver admitted to having items in the trunk, that a Walther P22 handgun with a

13

shaved off serial number was found in the trunk, that there was a backpack in the trunk that likely belonged to Mr. Story, and, that the backpack contained a thumb drive. The affidavit concludes, "I believe the [thumb drive] contains evidence of Marshall Story's possession of said firearm." CP at 266. This is insufficient to establish that Mr. Story was probably involved in criminal activity and that evidence of the criminal activity would be found on the thumb drive. *See Ollivier*, 178 Wn.2d at 846-47.

Even supposing there was probable cause to believe that Mr. Story illegally possessed a firearm, nothing would suggest that evidence of that crime could be found on the thumb drive. "'Probable cause requires a nexus between criminal activity and the item to be seized, and also a nexus between the item to be seized and the place to be searched.'" *State v. Thein*, 138 Wn.2d 133, 140, 977 P.2d 582 (1999) (quoting *State v. Goble*, 88 Wn. App. 503, 509, 945 P.2d 263 (1997)). No nexus exists between the thumb drive and the crime of unlawful possession of a firearm.

Because the affidavit in support of probable cause did not set forth facts sufficient to establish a reasonable inference that Mr. Story was probably involved in criminal activity and that evidence of the criminal activity would be located on the thumb drive, the trial court erred in granting the search warrant. As a result, the search warrant was invalid and the exclusionary rule requires that all evidence obtained from the search of the thumb drive be excluded.

*III. Mr. Story's convictions are not supported by sufficient evidence*

Mr. Story contends that absent the photographs illegally obtained from the thumb drive, there was insufficient evidence to support his convictions.

"The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992) (citing *State v. Green*, 94 Wn.2d 216, 220-22, 616 P.2d 628 (1980), *overruled on other grounds by Wash. v. Recuenco*, 548 U.S. 212, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006)). A claim of insufficient evidence admits the truth of the State's evidence as well as the truth of all inferences reasonably drawn therefrom. *Salinas*, 119 Wn.2d at 201.

A. Unlawful possession of a firearm

A person is guilty of unlawful possession of a firearm in the first degree if "the person owns, has in his or her possession, or has in his or her control any firearm after having previously been convicted or found not guilty by reason of insanity in this state or elsewhere of any serious offense as defined in this chapter." RCW 9.41.040(1)(a).

Possession may be actual or constructive. "Actual possession means that the goods are in the personal custody of the person charged with possession; whereas, constructive possession means that the goods are not in actual, physical possession, but

15

that the person charged with possession has dominion and control over the goods." *State v. Callahan*, 77 Wn.2d 27, 29, 459 P.2d 400 (1969).

The State establishes constructive possession by showing a defendant had dominion and control over the firearm. *Id.* at 30-31; *see also State v. Chouinard*, 169 Wn. App. 895, 899, 282 P.3d 117 (2012). Whether a defendant had dominion and control over an item is determined under the totality of the circumstances. *State v. Alvarez*, 105 Wn. App 215, 221-22, 19 P.3d 485 (2001). Mere proximity to the firearm is not sufficient to establish constructive possession. *Chouinard*, 169 Wn. App. at 899 (citing *State v. Raleigh*, 157 Wn. App. 728, 737, 238 P.3d 1211 (2010)). "And knowledge of the presence of contraband, without more, is insufficient to show dominion and control to establish constructive possession." *Id.* (citing *State v. Hystad*, 36 Wn. App. 42, 49, 671 P.2d 793 (1983)). "Courts hesitate to find sufficient evidence of dominion or control where the State charges passengers with constructive possession." *Id.* at 900.

There was no evidence that Mr. Story was in actual possession of the firearm on or about February 11, 2013. Since the firearm was not found on Mr. Story's person, the issue becomes whether there was sufficient evidence to support a finding that Mr. Story constructively possessed the firearm.

In *Callahan*, Washington's Supreme Court determined there was insufficient evidence to support the defendant's conviction for possession of narcotics. 77 Wn.2d at

16

31. The court recited the evidence on the issue: some of the defendant's material possessions, including scales used to measure drugs, were found on the same houseboat the drugs were on; the defendant had been staying on the houseboat for the preceding two or three days; visible drugs were discovered near the defendant during the search of the houseboat; and, the defendant admitted to handling the drugs earlier in the day. *Id.* at 31. The court determined that in order to have constructive possession, the State is required to prove dominion and control over the contraband or the premise where the contraband was located. *Id.* at 30-31. The court found that evidence the defendant had stayed at the houseboat for a few days and kept some of his possessions there was insufficient to establish dominion and control of the houseboat. *Id.* at 31. Reasoning that the evidence was insufficient to establish that the defendant had dominion and control over the drugs or the houseboat itself, the court reversed the defendant's conviction. *Id.* at 32

Similarly, in *Chouinard*, the court determined that there was insufficient evidence to support a conviction of unlawful possession of a firearm when the firearm was found near the defendant in the backseat of a car and the defendant admitted to knowing of the firearm's presence. 169 Wn. App. at 902-03. The court concluded there was no evidence that the defendant owned or used the firearm in question and reversed the conviction finding the State did not establish constructive possession. *Id.*

Here, as discussed above, the photographic evidence of Mr. Story with the firearm should have been excluded. Admissible evidence at trial viewed in the light most

17

favorable to the state, demonstrated that Mr. Story's material possessions were in the rental car, that the rental car was rented under Mr. Story's name, Mr. Story was a passenger in the rental car, and that the firearm was intentionally hidden in the trunk of the car.

Admissible evidence did not indicate that Mr. Story knew of the presence of the firearm, nor did it indicate that Mr. Story used the firearm. Further, while the rental car was in Mr. Story's name, the nature of it being a rental car permits the inference that belongings from a previous renter could be left in the vehicle. Mr. Story did not have dominion or control over the rental car such that he could be considered to have constructive possession of an item found under the spare tire well. The State failed to establish that Mr. Story exercised dominion or control over the actual firearm. There was insufficient evidence to support a finding that Mr. Story possessed the firearm.

B. Possession of a stolen firearm

Mr. Story also contends there was insufficient evidence to support his conviction of possession of a stolen firearm. He again argues that the State failed to establish possession of the firearm, as required for the conviction. "A person is guilty of possessing a stolen firearm if he or she possesses, carries, delivers, sells, or is in control of a stolen firearm." RCW 9A.56.310. Because there was insufficient evidence to establish that Mr. Story constructively possessed the firearm, his conviction must be overturned.

18

No. 32146-1-III
*State v. Story*

## *IV. Statement of Additional Grounds*

Mr. Story makes two arguments in his pro se statement of additional grounds.

Because reversal is required without addressing the arguments, we do not consider them.

Reverse and remand with instructions to dismiss with prejudice.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Siddoway, C.J.

WE CONCUR:

_____
Fearing, J.

_____
Lawrence-Berrey, J.

19