**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON | No. 56861-6-II |
| Respondent, | |
| v. | |
| JEROME ISAIAH GARNER, | PUBLISHED OPINION |
| Appellant. | |

GLASGOW, C.J.—A police officer arrested Jerome Isaiah Garner on an outstanding warrant after stopping a car and encountering Garner as a passenger. Garner tried to flee on foot but the officer apprehended him. After placing Garner under arrest, the officer spoke with the car's driver, who said Garner left three backpacks behind in her car. The officer asked the driver for permission to search the car and she granted it. The officer then searched Garner's backpacks without requesting his permission and found controlled substances.

The State charged Garner with two counts of possession of a controlled substance with intent to deliver. Before trial, Garner moved to suppress evidence obtained from the warrantless search of his backpacks. The trial court expressly considered whether the driver's consent to search the car extended to Garner's backpacks, and it ultimately denied Garner's suppression motion. After a bench trial, the trial court found Garner guilty of both counts of possession with intent to deliver. Garner argues that the trial court improperly denied his suppression motion. We hold that the trial court should have granted Garner's suppression motion, and we reverse and remand for

56861-6-II

proceedings consistent with this opinion. We need not address any other arguments Garner raises in his appeal.

FACTS

A police officer on patrol suspected that a driver had a suspended license. The officer conducted a traffic stop. When the officer approached the car, he saw Garner in the front passenger seat. The officer recognized Garner and knew that there was an outstanding warrant for his arrest.

The officer ordered Garner to stay seated and called for backup. Garner stepped out of the car and began "digging around in his pockets." 1 Verbatim Rep. of Proc. (VRP) at 56. The officer drew his gun and "continued to give [Garner] verbal commands." *Id.* Garner said he was trying to smoke a cigarette, but then he fled. The officer chased Garner, placed Garner in handcuffs, and searched Garner's pockets, finding a pipe, $1,306 in cash, and a small amount of a substance the officer suspected to be heroin. After the search, the officer placed Garner in the back of his patrol car. A different police officer stood with Garner while the first officer went to speak with the driver.

The driver told the officer that when his patrol car was following behind her vehicle, Garner had asked her to pull into a gas station. She added that Garner had "tried to hide something under her seat" and had moved bags to the vehicle's back seat. 1 VRP at 12. The driver pointed to two backpacks on the rear floorboard and a third backpack "on the floorboard of the front passenger seat." *Id.* She then gave the officer permission to search the car "without limitation." *Id.*

The officer searched the backpacks and found an insurance card with Garner's name on it, "a Ziploc bag with a variety of suspected narcotics, a scale, a folding knife with suspected drug residue, a plastic scoop with suspected drug residue, and sandwich baggies." Clerk's Papers at 39-

2

56861-6-II

40. After the officer informed Garner of his *Miranda*[1] rights, Garner admitted that "the suspected drugs in question belonged to him." 1 VRP at 44-45. Garner also "indicated he was homeless." 1 VRP at 77. Later testing established that the controlled substances found in the backpacks were 86.9 grams of methamphetamine and 3.8 grams of heroin.

The State charged Garner with two counts of possession of a controlled substance with intent to deliver.[2] Before trial, Garner moved to suppress all evidence obtained from his arrest, including the contents of his backpacks and his postarrest statements. At a hearing on Garner's suppression motion, Garner raised three arguments: that he had standing to challenge the traffic stop, that the officer unlawfully extended the traffic stop to search the car, and that the officer did not execute a lawful search incident to arrest. The State responded that "Garner's own actions expanded . . . the original traffic stop . . . into a drug investigation." 1 VRP at 21-22. It contended that the officer spoke to the driver as part of the drug investigation and that the driver gave consent to "search the whole car." 1 VRP at 22.

The trial court agreed with the defense that Garner had standing to challenge the traffic stop. But the trial court concluded that the officer did not unlawfully extend the traffic stop because he only extended it based on Garner's decision to flee. The trial court further concluded that the search was "not permitted by search incident to arrest, but it was permitted by the owner's consent to search the vehicle." 1 VRP at 23. Finally, the trial court considered whether the driver could validly consent to the search of Garner's bags. The trial court reasoned, "Our Supreme Court has been pretty clear that requiring an officer to obtain consent from each occupant of a vehicle before

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).
[2] The State also charged Garner with a count of simple drug possession, which the trial court later dismissed.

3

56861-6-II

searching a vehicle is unworkable and goes beyond the requirements of the existing federal case law." 1 VRP at 24. The trial court then denied Garner's motion to suppress.

After a bench trial, the trial court found Garner guilty of both counts of possession of a controlled substance with intent to deliver.

Garner appeals his convictions.

## ANALYSIS

### I. SUPPRESSION OF EVIDENCE

Garner argues that the trial court should have suppressed the evidence police seized from his backpacks. He contends that the driver's consent to the search of her car did not extend to a search of his backpacks. The State responds that the search was proper because the driver's consent applied to the backpacks within the car and Garner voluntarily abandoned the bags when he ran from the officer. We agree with Garner.

The parties do not dispute the facts regarding what happened at the traffic stop and how the search came about. We review a trial court's conclusions of law on a motion to suppress evidence de novo, and we review application of the law to unchallenged or undisputed facts de novo. *State v. Samalia*, 186 Wn.2d 262, 269, 375 P.3d 1082 (2016); *State v. Valdez*, 167 Wn.2d 761, 767, 224 P.3d 751 (2009).

### A. Article I, Section 7

Article I, section 7 of the Washington Constitution states, "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." Article I, section 7 "encompasses the privacy expectations protected by the Fourth Amendment . . . and, in some cases, may provide greater protection." *Samalia*, 186 Wn.2d at 268. For instance, under our state

4

56861-6-II

constitution, automobile passengers receive heightened protection. *State v. Reichenbach*, 153 Wn.2d 126, 134, 101 P.3d 80 (2004). And "in the context of an automobile search," a passenger's rights "are independent from those of a driver." *Id.*

A search warrant "provides the requisite 'authority of law'" to support a search. *State v. Morse*, 156 Wn.2d 1, 7, 123 P.3d 832 (2005) (quoting *State v. Ladson*, 138 Wn.2d 343, 350, 979 P.2d 833 (1999)). Accordingly, a "warrantless search is per se unreasonable . . . unless it falls within one of the carefully drawn and jealously guarded exceptions to the warrant requirement." *State v. Ortega*, 177 Wn.2d 116, 122, 297 P.3d 57 (2013). "The State bears a heavy burden in showing that the search falls within one of the exceptions." *State v. Jones*, 146 Wn.2d 328, 335, 45 P.3d 1062 (2002).

Washington courts have afforded a person's bag or closed container heightened protection under the federal and state constitutions. *See State v. Boland*, 115 Wn.2d 571, 578, 800 P.2d 1112 (1990) (trash can on a curb); *State v. Giberson*, No. 56081-0-II, slip op. at 9 (Wash. Ct. App. Apr. 4, 2023), D2 56081-0-II Published Opinion.pdf (wa.gov) (grocery bags); *State v. Monaghan*, 165 Wn. App. 782, 795, 266 P.3d 222 (2012) (locked safe); *State v. Rison*, 116 Wn. App. 955, 959, 69 P.3d 362 (2003) (eyeglass case). The Washington Supreme Court has also recognized an expectation of privacy in purses, briefcases, and other traditional containers of personal belongings. *State v. Evans*, 159 Wn.2d 402, 409, 150 P.3d 105 (2007).

B.      Consent

One exception to the warrant requirement is consent to search. *State v. Bowman*, 198 Wn.2d 609, 618, 498 P.3d 478 (2021). "The consent exception requires the State [to] show that [the] consent to search is voluntary, the consenting party has authority to consent, and the search

5

56861-6-II

does not exceed the scope of the consent." *Id.* at 618-19. All three divisions of the Court of Appeals have given personal bags and containers protection in the context of consent searches. *See Giberson*, slip op. at 9; *Monaghan*, 165 Wn. App. at 794; *Rison*, 116 Wn. App. at 959.

In *Giberson*, we held that a motel room occupant's consent to search his room did not extend to grocery bags the occupant's guest left in the room. Slip op. at 10. We reasoned that the occupant "did not own, possess, or control" the grocery bags, that the guest "had a reasonable expectation of privacy in his grocery bags," and that the occupant told one of the searching officers that some bags in the room were not his. *Id.* at 7, 9. Similarly, in *Rison*, Division Three held that a search was unlawful where the defendant was a guest in a tenant's apartment, the tenant gave police permission to search the apartment, and police found drugs in the guest's eyeglass case. 116 Wn. App. at 958, 963. The court reasoned that police "easily could have and should have requested and obtained" the guest's consent before searching the eyeglass case because the guest was present during the search. *Id.* at 962.

Division One has applied a similar analysis in the vehicle context. In *Monaghan*, Division One held that a driver's consent to search his car's trunk did not extend to the locked safe in the trunk. 165 Wn. App. at 794-95. The court reasoned that the driver did not explicitly consent to the search of the safe because he did not give the officer permission to open it, and the driver did not impliedly consent to the search of the safe because the record lacked evidence that he saw the officer unlock it. *Id.*

Here, keeping in mind that exceptions to the warrant requirement "are narrowly drawn," *Jones*, 146 Wn.2d at 335, we hold that the driver's consent to search her car did not extend to Garner's backpacks. Like the driver in *Monaghan*, Garner did not give explicit consent to search

6

56861-6-II

his backpacks, and the record does not show that he gave implied consent. And as a passenger in the driver's car, Garner occupied a similar position to the guests in *Giberson* and *Rison*.

It is true that in *State v. Cantrell*, the Washington Supreme Court noted that a person's privacy interest in a vehicle "does not rise to the level of a person's expectation of privacy in a residence." 124 Wn.2d 183, 190, 875 P.2d 1208 (1994). But the *Cantrell* court did not engage in a state constitutional analysis, concluding that under the Fourth Amendment, "the voluntary consent of one who possesses *common authority over a vehicle* is sufficient to support" a vehicle search. *Id.* at 192 (Emphasis added.) In this case, nothing in the record indicates that the driver and Garner possessed common authority over Garner's backpacks. Like the locked safe inside the driver's car in *Monaghan* and the guest's eyeglass case inside the tenant's apartment in *Rison*, Garner's backpacks were closed containers in which Garner had a legitimate expectation of privacy under article I, section 7. And like the officer in *Giberson*, the officer here searched the bags after he knew that they did not belong to the person who gave consent to search. In fact, the driver specifically told the officer that the backpacks belonged to Garner, who was detained nearby and available for questioning. Consent to search is a narrow exception to the warrant requirement. Accordingly, the officer was required to either ask for Garner's consent to search the backpacks or obtain a warrant first.

C.     Abandoned Property

There is another exception to the warrant requirement for abandoned property. *Evans*, 159 Wn.2d at 407. Police "'officers may retrieve and search voluntarily abandoned property without implicating an individual's rights under the Fourth Amendment or under article I, section 7 of our state constitution.'" *Id.* at 408 (quoting *State v. Reynolds*, 144 Wn.2d 282, 287, 27 P.3d 200

7

56861-6-II

(2001)). A person voluntarily abandons property where, in leaving the property, they relinquish their reasonable expectation of privacy in it. *State v. Hamilton*, 179 Wn. App. 870, 885, 320 P.3d 142 (2014).

In determining whether relinquishment occurred, we consider "the status of the area where the searched item was located." *Id.* at 885. As explained above, a person has a reasonable expectation of privacy in their bag. *Evans*, 159 Wn.2d at 409. Moreover, we generally decline to find abandonment if the defendant left the item in an area where they had a privacy interest, such as the interior or the hood of their car. *Id.* at 409, 413. This is true even if the defendant disclaimed ownership of the item. *Id.* at 413 (holding that a defendant who disclaimed ownership of a briefcase in his truck did not abandon it because he "had a privacy interest in the area searched," the briefcase "was locked, and he objected to its seizure"); *Hamilton*, 179 Wn. App. at 885-86 (holding that a defendant who left a purse in her house did not abandon it despite at one point telling officers she did not own it).

Conversely, we generally find abandonment if the defendant had "no privacy interest in the area where the searched item [was] located." *Hamilton*, 179 Wn. App. at 886. For example, in *Reynolds*, the Washington Supreme Court held that a passenger voluntarily abandoned his coat when, after an officer arrested the car's driver, the officer found the passenger's coat on the ground and "'stuffed underneath the passenger side of the vehicle.'" 144 Wn.2d at 285. And in *Samalia*, the court found that a defendant abandoned his cell phone where he left it in a stolen vehicle while fleeing from a police officer. 186 Wn.2d at 278, 280.

We also consider whether the defendant showed an intent to recover the property, generally finding no relinquishment of a reasonable expectation of privacy where they displayed that intent.

8

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

56861-6-II

*Id.* at 277-79. For example, in *State v. Kealey*, we held that a defendant mislaid, rather than abandoned, her purse when she left it on a department store couch and returned to the store five minutes later to look for it. 80 Wn. App. 162, 165, 173-174, 907 P.2d 319 (1995). In contrast, in *Samalia*, the Washington Supreme Court held that the defendant did not show an intent to recover his cell phone when he left it behind while fleeing a stolen vehicle despite an officer's commands. 186 Wn.2d at 278. And in *United States v. Nowak*, a federal case with factual similarities to this one, the Eighth Circuit held that a passenger who left his backpack in a friend's car had abandoned it, reasoning that the passenger never "gave any indication—verbal or otherwise—that he" wanted his friend to safeguard the backpack and that the circumstances did not "lend themselves to such a conclusion." 825 F.3d 946, 949 (8th Cir. 2016).

Garner had a reasonable expectation of privacy in his backpacks. And while Washington case law does not squarely address whether a passenger has a reasonable expectation of privacy in items left in another's car, our cases point to the conclusion that Garner did not relinquish his expectation of privacy when he left his backpacks in the driver's car. Unlike the defendant in *Samalia*, Garner did not leave his backpacks in a stolen car. He left them in a car he had occupied with the driver's permission. And unlike the defendant in *Reynolds*, he did not remove the backpacks from the car and leave them on the road. Rather, Garner, who lacked housing, left his belongings with a person he knew. Moreover, Garner never disclaimed ownership of the backpacks. He took the time to put two of the backpacks on the vehicle's rear floorboard and tried stowing the third backpack under the driver's seat. The circumstances lend themselves to the conclusion that he intended to safeguard the backpacks until he could recover them.

9

56861-6-II

The dissent focuses on the fact that Garner was fleeing law enforcement. But in determining whether a person relinquished their reasonable expectation of privacy in their property, Washington case law directs us to focus primarily on where the item was located and whether the defendant showed an intent to recover it. *Evans*, 159 Wn.2d at 409-10; *Hamilton*, 179 Wn. App. at 885-86; *Samalia*, 186 Wn. App. at 277-79. It does not direct us to heavily weigh a person's reason for leaving the item behind. Thus, the *Samalia* court noted the defendant's flight from law enforcement only while discussing the defendant's lack of a privacy interest in the stolen car and the unlikelihood that a person in his position would have gone back to retrieve his phone. 186 Wn.2d at 277-279. The *Samalia* court did not rely exclusively on the fact that Samalia was fleeing the police.

In contrast, Garner left his belongings in a place he reasonably expected they would remain private, in the driver's car, and he showed an intent to recover his backpacks by attempting to conceal them. Under these circumstances, we hold that the abandoned property exception to article I, section 7 does not apply. Our holding accords with case law emphasizing that exceptions to the warrant requirement should remain "carefully drawn and jealously guarded." *Ortega*, 177 Wn.2d at 122.

D.      Inevitable Inventory Search

The State argues that even if the search was improper, it did not violate Garner's "constitutional rights because officers would have conducted an inventory search of the bags if they were taken to the jail with Garner." Resp't's Br. at 9. This argument asks us to apply the inevitable discovery doctrine, which "allows for the admission of evidence that would have been discovered even without the unconstitutional source." *Utah v. Strieff*, 579 U.S. 232, 238, 136 S.

10

56861-6-II

Ct. 2056, 195 L. Ed. 2d 400 (2016). However, the Washington Supreme Court has held that the inevitable discovery doctrine is incompatible with article I, section 7. *State v. Winterstein*, 167 Wn.2d 620, 636, 220 P.3d 1226 (2009). It cannot justify admission of evidence from the backpacks.

The trial court should have granted Garner's motion to suppress evidence obtained from Garner's backpacks. Because we must reverse Garner's conviction on this basis, we need not address Garner's other arguments.

CONCLUSION

We reverse Garner's convictions because the trial court should have granted Garner's motion to suppress and remand for proceedings consistent with this opinion.

Glasgow, C.J.

I concur:

Veljacic, J.

11

56861-6-II

PRICE, J. (Dissent) — There is much I agree with in the majority's well-explained opinion. But I cannot agree with the majority's conclusion that Garner did not abandon his backpacks when he fled from law enforcement at the scene.

As the majority explains, a person voluntarily abandons property when they relinquish their expectation of privacy to the property. *State v. Hamilton*, 179 Wn. App. 870, 885, 320 P.3d 142 (2014). After accurately characterizing the law, the majority then concludes that Garner did not relinquish his expectation of privacy in his backpacks when he "left" them in the driver's car. Majority at 9. It appears the majority rests its conclusion on the following: (1) Garner had permission to be in the car, and it was not stolen (distinguishing *State v. Samalia*, 186 Wn.2d 262, 375 P.3d 1082 (2016)), (2) he left the backpacks with someone he knew and did not leave them on the road (distinguishing *State v. Reynolds*, 144 Wn.2d 282, 27 P.3d 200 (2001)), and (3) he never disclaimed ownership, and by attempting to conceal them, an intent to safeguard the backpacks should be inferred.

Were those the only facts in this case, I might agree with the majority. But Garner did not merely "leave" the backpacks; he fled the scene, running from law enforcement. This fact compels me to part from the majority.

Washington courts do not appear to have squarely addressed this issue. None of the cases relied on by the majority involve an analysis on relinquishment of the expectation of privacy when an individual flees from law enforcement and leaves their belongings in a place the person was permitted to be. *Samalia* comes close; it held that the defendant abandoned his cell phone when he left his phone in a stolen car as he ran from the police. 186 Wn.2d at 278-79 ("[T]he trial court reasonably inferred [the defendant's] intent to abandon his cell phone by his flight from the stolen

12

56861-6-II

vehicle despite [law enforcement's] commands.") Whether *Samalia's* result would be the same if, like here, the car was not stolen is left unanswered.

But other courts have found abandonment of property when the owner flees in similar situations. *United States v. Nowak*, 825 F.3d 946, 949 (8th Cir. 2016); *see also United States v. Hester*, 161 F. Supp. 3d 338, 346 (D.N.J. 2016), aff'd, 910 F.3d 78 (3rd Cir. 2018) (passenger abandoned firearm in car when he dropped it to the floorboards, perhaps hoping it would not be seen, and fled from police); *United States v. Espinoza-Reynosa*, No. 19-CR-209 (SRN/DTS), 2020 WL 1698788, at *4 (D. Minn. Jan. 6, 2020)[3] (defendant abandoned rental car and duffel bag in the trunk when he fled from police on foot with no indication he was leaving the car "in somebody else's safekeeping"); *McKinnon v. State*, 305 Ga. App. 871, 872, 700 S.E.2d 875 (Ga. Ct. App. 2010) (defendant abandoned vehicle and its contents by fleeing from police, no indication vehicle was stolen); *People v. Childs*, 226 Ill. App. 3d 915, 919-20, 589 N.E.2d 819 (Ill. App. Ct. 1992) (defendant abandoned vehicle and its contents by fleeing from police, no indication vehicle was stolen).

In *Nowak*, the defendant, Nowak, was a passenger in his friend's car when it was stopped by law enforcement. 825 F.3d at 947. During the stop, Nowak fled the scene and left his backpack in his friend's car. *Id.* The backpack contained a firearm. *Id*. at 947-48. Nowak moved to suppress the firearm, arguing that, notwithstanding his fleeing the scene, he did not abandon his property

---

[3] *See* Fed. R. App. P. 32.1 ("(a) CITATION PERMITTED.  A court may not prohibit or restrict the citation of federal judicial opinions, orders, judgments, or other written dispositions that have been: (i) designated as 'unpublished,' 'not for publication,' 'non-precedential,' 'not precedent' or the like; and (ii) issued on or after January 1, 2007.").

56861-6-II

because he left it in a private place with his friend. *Id.* at 948-49. The court rejected Nowak's

argument, stating:

> In this case, there is simply no evidence that Nowak gave any indication—verbal or otherwise—that he intended for [his friend] (or anyone else) to take care or possession of the backpack in his absence such that his person belongings would remain private. Nor do the circumstances lend themselves to such a conclusion. Instead, the evidence in this case showed the contrary: When expressly directed by a law enforcement officer to remain in the car, Nowak got out of the car, ran from the scene, and left his belongings behind. The objective facts available to the officers support the finding that Nowak abandoned his backpack.

*Id.* at 949.

Here, like Nowak, Garner gave no outward indication that he intended to recover his

backpacks after he fled from law enforcement. He said nothing about protecting his belongings to

the driver—in fact, the driver gave permission to law enforcement to search his backpacks. Even

though the items were in the car belonging to someone he knew, Garner's flight from the scene

after law enforcement instructed him to stay negates any suggestion that he did not relinquish his

possession of the backpacks.[4]

The majority acknowledges the factual similarities of *Nowak* to this case, but the majority

still finds no abandonment because it infers that Garner, by attempting to hide his backpacks,

intended to safeguard his backpacks until he could recover them. Majority at 9. A more plausible

inference is that Garner wished to avoid charges resulting from the contraband in the backpacks

by initially trying to hide them, but then gave up entirely and attempted to flee.

---

[4] It is true that *Nowak* was decided under the Fourth Amendment and article 1, section 7 may, in some circumstances, provide more protection than the Fourth Amendment. But it seems unlikely that any additional privacy protections in Washington are so broad as to preserve Garner's expectation of privacy as he sprinted away from a lawful order of law enforcement. (A lawful order, however, is critical. *See Reynolds*, 144 Wn.2d at 288 (abandonment as a result of illegal conduct by law enforcement is involuntary.))

14

56861-6-II

In any event, Garner fled law enforcement, leaving his property in a car owned by another with no instruction to anyone to protect his belongings. The majority never squarely confronts these facts in the critical context of Garner's decision to flee from law enforcement. I would hold that Garner abandoned his backpacks.

Respectfully, I dissent.

_____
PRICE, J.